203 F.3d 156 (2nd Cir. 2000)
 UNITED STATES OF AMERICA, Appellee,
v.
ANGEL PADILLA, aka "Cuson"; JAMES ALBIZU, aka "Pito"; ROBERTO COLON, aka "Papo"; DARRELL CAMPBELL, aka "D"; ANTHONY MORALES, aka "Cuba", aka "Tony Cuba"; JAMES BOGGIO, aka "Jay"; DIONISIO MOJICA, aka "Little Johnny"; EDWIN GONZALEZ, aka "Peachy"; MARTIN KORTRIGHT, aka "Supreme"; JAMES RODRIGUEZ, aka "Spanky"; WILSON RODRIGUEZ, aka "Opie"; RAFAEL TORRES, aka "Ski"; STEVEN CAMACHO, aka "Spanky", aka "Spank"; JAIME RODRIGUEZ, aka "Jay"; ANNA RODRIGUEZ, aka "Momma Calderon"; RICARDO FONTAN; RAFAEL CRUZ; MARVIN JENKINS; JOSEPH PILLOT, aka "Joey"; ANTONIO FELICIANO, aka "Jamaican Tony", aka "Pat A. Guess", aka "Christopher Guest"; and TRUMONT WILLIAMS, Defendants,
ANGEL PADILLA, aka "Cuson"; IVAN RODRIGUEZ, and GREGORY CHERRY, aka "G",aka "Ninja",
Defendants-Appellants.
 Docket Nos. 98-1360(L), 98-1374, 98-1543(con)
August Term 1999
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued Sept. 10, 1999
Decided: Feb. 7, 2000
 
 Appeal from a judgment in the United States District Court for the Southern District of New York (Haight, J.), convicting defendants-appellants of numerous crimes stemming from their participation in a violent gang that extorted payments from heroin dealers in the Bronx and protected its own organization through murder. Most of defendants-appellants' arguments on appeal are addressed in a separate order filed concurrently with this opinion. The questions here considered are (1) whether the district court violated defendants-appellants' Sixth Amendment right to counsel by ordering defense counsel during the trial not to reveal to their clients an ongoing investigation into alleged jury and witness tampering, (2) whether the district court denied defendant-appellant Padilla's right to be present at all stages of his trial by excluding him from the conferences regarding the obstruction of justice investigation, and (3) whether the evidence of witness and jury tampering uncovered by the investigation was properly admitted against defendant-appellant Padilla.
 
 
 1
 AFFIRMED.
 
 
 2
 DAVID WIKSTROM, Esq., New York, New York, for Defendant-Appellant Angel Padilla.
 
 
 3
 WILLIAM J. STAMPUR, Esq., Hurwitz Stampur & Roth New York, New York, for Defendant-Appellant Ivan Rodriguez.
 
 
 4
 AZRA RAYCHES FELDMAN, Esq., Feldman & Feldman, Roslyn, New York, for Defendant-Appellant Gregory Cherry.
 
 
 5
 MARGERY B. FEINZIG, Esq., Assistant United States Attorney (MARY JO WHITE, United States Attorney for the Southern District of New York, ALEXANDER A.E. SHAPIRO, on the brief) for Appellee.
 
 
 6
 Before : WALKER and CALABRESI, Circuit Judges, and BERMAN,*. District Judge.
 
 JOHN M. WALKER, Circuit Judge:
 
 7
 Defendants-appellants Angel Padilla and Ivan Rodriguez appeal from a June 30, 1998 judgment of the United States District Court for the Southern District of New York, Charles S. Haight, Senior District Judge. They allege numerous errors in the proceedings below, all but three of which are rejected in a separate summary order filed concurrently with this opinion. We summarize only the facts relevant to the issues addressed in this opinion.
 
 I.
 
 8
 The evidence adduced at trial proved that Padilla, also known as "Cuson," was a leader of a racketeering enterprise called C&C which extorted "rent" from neighborhood drug dealers in the Bronx and committed many violent crimes both to further its extortionate goals and to discipline its own members. In 1992, after a rift formed within C&C's ranks, Padilla hired Rodriguez, a professional hitman, to kill his onetime partner Calderon. A shooting war broke out, leaving Calderon and many C&C members dead before the police arrested Padilla, Rodriguez, and sixteen of their co-defendants. All of the defendants save Padilla and Rodriguez pled guilty prior to trial.
 
 
 9
 Following a twelve-week jury trial, Padilla was convicted of numerous violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. 1951 et seq., including murder, kidnapping, and conspiracies to commit murder and kidnapping in violation of 18 U.S.C. 1951, 1959, 1962; he was also convicted of conspiracy to aid and abet the distribution of heroin in violation of 21 U.S.C. 846, and of carrying a firearm during and in relation to crimes of violence and drug trafficking in violation of 18 U.S.C. 924(c). He was sentenced to life imprisonment, a consecutive term of 185 years' imprisonment, mandatory assessments, and five years' supervised release. Rodriguez was convicted of murder and conspiracy to commit murder in violation of 18 U.S.C. 1959(a)(5), (a)(1), and of carrying a firearm during and in relation to other crimes in violation of 18 U.S.C. 924. He was sentenced to life imprisonment, a consecutive term of five years' imprisonment, mandatory assessments, and five years of supervised release.
 
 
 10
 Appellants now challenge their convictions on numerous grounds, most of which we reject in the separate summary order. In this opinion, we address only the following issues: (1) whether the district court violated defendants-appellants' Sixth Amendment right to counsel by ordering defense counsel during the trial not to reveal to their clients an ongoing investigation into alleged jury and witness tampering, (2) whether the district court denied defendant-appellant Padilla's right to be present at all stages of his trial by excluding him from the conferences regarding the ongoing investigation, and (3) whether the evidence of witness and jury tampering developed by the investigation was properly admitted against Padilla. We find that none of these issues merit overturning the convictions of Padilla and Rodriguez. Accordingly, we affirm the district court's judgments as to both defendants.
 
 II.
 
 11
 During the trial, Judge Haight received a letter from an inmate at the Metropolitan Correction Center who was a defendant in an unrelated proceeding pending before the judge. The inmate revealed a plan by Rodriguez and Padilla to purchase perjured witness testimony and further indicated that a juror had been bought off. The letter concluded with a plea to Judge Haight not to reveal the information to the defendants or defense counsel "because the danger for me in this instance is very real and the risk large, also my family's safety is at stake."
 
 
 12
 Judge Haight met with the prosecutor and both defense counsel to discuss the issues raised in the inmate's letter. The government proposed establishing a protective "Chinese Wall" within the United States Attorney's office that would shield the Assistant United States Attorneys who were trying the case against Padilla and Rodriguez from those who would be assigned to investigate the inmate's allegations. The government expressed its belief that revealing the allegations to Padilla and Rodriguez would compromise their investigation and asked the district judge to order defense counsel not to reveal the information to their clients. Defense counsel countered that they had a duty to advise their clients of the investigation and to instruct them not to discuss the matter with anyone. They argued that failing to discuss the pending investigation with their clients would erode their clients' trust and, ultimately, impair their ability to represent them. After carefully considering both arguments, Judge Haight ordered defense counsel not to reveal the investigation to Padilla or Rodriguez. He also ordered the record of this and all other closed conferences with counsel on the subject to be sealed.
 
 
 13
 The government's preliminary inquiries into the inmate's allegations soon revealed that they were well founded. The district court authorized further investigation but ordered the government not to interview either defendant or contact any juror without the court's permission. Six days later, the district court informed defense counsel that the investigation was proceeding and reiterated its order that defense counsel not disclose any of this information to their clients. Defense counsel renewed their objections.
 
 
 14
 Sixteen days after the district court's initial meeting with counsel, and one week before the defense case was expected to begin, defense counsel asked for the results of the investigation to enable them to settle upon a defense strategy, to decide which witnessess to call, and to otherwise prepare their defenses. Judge Haight agreed and ordered the government to reveal to defense counsel the results of the investigation. He simultaneously lifted the restrictions on defense counsels' communications with their clients.
 
 III.
 
 15
 On appeal, Padilla and Rodriguez both argue that the district court's order precluding counsel during the trial from revealing to their clients the allegations and subsequent investigation of witness and jury tampering violated their Sixth Amendment right to counsel. Padilla also claims that his Fifth Amendment due process rights were also violated by restricting his communication with his attorney.
 
 
 16
 We note at the outset that the district court might have chosen to withhold the information both from defendants and from defense counsel. Had he done so, there is little doubt in our minds that there could be no claim of a constitutional violation. Such investigations are appropriately secret matters. See, e.g., Fed. R. Crim. P. 6. The question here is a different one, however. The district court chose to inform defense counsel of the inmate's allegations, the government's initial response that they were well founded, and the ensuing full investigation. Thus, the question presented is, once the district court revealed the investigation to defense counsel, did it violate the defendants' Sixth Amendment rights by forbidding counsels' disclosure of the investigation to the defendants. We are therefore called upon to draw further the admittedly "thin line" between constitutional and unconstitutional restrictions on defendants' right to consult with counsel during their trial. See Perry v. Leeke, 488 U.S. 272, 280 (1989).
 
 
 17
 Blanket prohibitions on defendants' communications with their attorneys, even for a relatively short period of time, have been held to violate the Sixth Amendment. See Geders v. United States, 425 U.S. 80 (1976) (forbidding all communication overnight between defendant and his counsel denied defendant's Sixth Amendment rights); see also Jones v. Vacco, 126 F.3d 408, 416-17 (2d Cir. 1997) (weekend-long ban on communication between client and his attorney violated Sixth Amendment). Nevertheless, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client . . . violates a defendant's Sixth Amendment right to counsel." Morris v. Slappy, 461 U.S. 1, 11 (1983). For example, in Perry v. Leeke the Supreme Court found no Sixth Amendment violation when the district court ordered a testifying defendant not to speak with his counsel during a fifteen minute break at the conclusion of his direct testimony. See Perry, 488 U.S. at 283-84.
 
 
 18
 The difference between Perry and Geders is not the quantity of communication restrained but its constitutional quality. A defendant who testifies in his own defense voluntarily assumes two roles at trial: defendant and witness. "[W]hen [the defendant] assumes the role of a witness, the rules that generally apply to other witnesses - rules that serve the truth-seeking function of the trial - are generally applicable to him as well." Perry, 488 U.S. at 282. When the defendant acts as a witness, the court may impose reasonable restrictions on his communication with counsel to prevent improper coaching and to ensure the integrity of the trial's truth-seeking function. See id.; Vacco, 126 F.3d at 416. However, as the defendant, his right to counsel otherwise must remain unconstrained. Because communications between a defendant and his attorney are integral to constitutionally required representation, even overnight prohibitions on such communication may be constitutionally defective. See Geders, 425 U.S. at 88. However, no such defect occurs when the ban is in place "during a brief recess in which there is a virtual certainty that any conversation between the witness and the lawyer would relate to the ongoing testimony." See Perry, 488 U.S. at 283-84. Thus, communications between a defendant and his counsel about matters relating to defendant's role as a witness may be restricted to preserve the trial's truth-seeking function.
 
 
 19
 In this case, Padilla and Rodriguez similarly occupied two distinct roles in their trial; on the one hand, they were defendants as charged in the indictment and, on the other, they were subjects of an ongoing investigation into different crimes that related to the trial's truth-seeking function. The district court's order banned only communications that were centrally related to the latter, and that would jeopardize the integrity of the trial process. Cf. Nix v. Whiteside, 475 U.S. 157, 169 (1986) (finding that perjury is as much of a crime as jury and witness tampering and "undermines the administration of justice"); United States v. Gotti, 794 F.2d 773 (2d Cir. 1986) (affirming bail denial where the defendant was found likely to "tamper with witnesses or 'pervert' the trial process"). Just as a testifying witness may not use the right to counsel to receive improper coaching, Padilla and Rodriguez have no Sixth Amendment right to be warned of an ongoing investigation into activities implicating the trial's truth-seeking function. The district court's order was drawn as narrowly as possible to ensure that defendants were able to discuss with counsel all matters pertaining to their defense so that the communications proscribed did not implicate counsel's representation regarding the crimes charged. And, ultimately, the government's obstruction of justice investigation was fully revealed to the defendants when it became relevant to the defense counsels' decisions about which witnesses to call and the nature of expected cross-examination should defendants testify.
 
 
 20
 In the circumstances, the able and experienced district judge followed a prudent course that was attentive to the defendants' right to present their defenses while protective of the integrity of the trial process. Accordingly, we find no constitutional violation in the district court's restriction on counsels' client communications.
 
 
 21
 Padilla further argues that the district court denied his right to be present at all stages of his trial in violation of the Fifth and Sixth Amendments and Fed. R. Crim. P. 43(a) by excluding him from the conferences regarding the obstruction of justice investigation. His argument is without merit. First, we do not believe that Judge Haight's meetings with counsel to oversee the ongoing investigation into crimes other than those for which Padilla was being tried were stages of the trial at which he was entitled to be present. Cf. United States v. Lampton, 158 F.3d 251, 258 (5th Cir. 1998) (upholding the district court's decision to voir dire jurors outside defendants' presence following allegations of witness tampering). Even if we were to assume, arguendo, that they were stages of the trial within the meaning of Rule 43(a), Padilla's presence at these conferences, all of which were held out of the jury's presence, would not have contributed to "the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). The district court excluded defendants from these meetings because of a fully justified concern for the safety of the informant and the integrity of the collateral investigation. The district court's actions, in the face of a difficult situation, did not infringe Padilla's right to be present at all stages of his trial.
 
 
 22
 At trial, after the results of the investigation had been revealed to the defendants, the government sought to introduce the resulting evidence against both Rodriguez and Padilla as tending to prove their consciousness of guilt. Specifically, the government sought to introduce a note from Rodriguez to a bribed witness, Barry Shawn, and taped telephone conversations between Shawn and a third co-conspirator directly implicating Rodriguez in the attempt to bribe witnesses and a juror. The district court ultimately admitted the evidence against both defendants relying on the hearsay exception for co-conspirator statements. See Fed. R. Evid. 801(d)(2)(E). Padilla argues that the evidence was inadmissible against him, was in any event hearsay, and that the evidence was more prejudicial than probative under Fed. R. Evid. 403. We disagree.
 
 
 23
 We review a district court's admission of alleged hearsay evidence only for "clear error." See United States v. Orena, 32 F.3d 704, 711 (2d Cir. 1994) (citing Bourjaily v. United States, 483 U.S. 171, 181 (1987)). The exception to the hearsay rule for co-conspirator statements requires that the district court find by a preponderance of the evidence "first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999); see also United States v. Diaz, 176 F.3d 52, 83 (2d Cir. 1999). While the district court may consider the hearsay statement itself to determine the existence of a conspiracy, see Bourjaily, 483 U.S. at 181, Padilla correctly argues that "there must be some independent corroborating evidence of the defendant's participation in the conspiracy." United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996).
 
 
 24
 The district court distinguished between two separate uses of the single note from Rodriguez to Shawn, (1) as hearsay admissible in furtherance of the conspiracy, and (2) as a non-hearsay statement not admitted for the truth of the matter asserted but to establish a conspiratorial connection between Padilla and Rodriguez. The note stated:
 
 
 25
 I send this letter to you to let you know about the man, he said everything is "ok" and he take care with you, maybe for next weeks check your address. When you testify, remember I need to use interpretation. Use name like Papo, Tony and that people go to Otisville right now and you don't know the real names. The case looking good for us, we winner some point. Tell "Henry" Cuson told me "Taivo" was in other tiar [sic] H and he was in M. But he tried to send the message to him.
 
 
 26
 The first part of the note is plainly in furtherance of the conspiracy to suborn perjury; it contains directions about how Shawn should testify and reassurances about the trial's outcome. See Gigante, 166 F.3d at 82 (finding that evidence in furtherance of a conspiracy "can include those statements 'that provide reassurance, or seek to induce a co-conspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy.'") (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990)). The more difficult question is whether the note and the other evidence of witness and jury tampering were admissible against Padilla. Padilla argues that no independent evidence corroborated his participation in the conspiracy. We disagree.
 
 
 27
 The district court relied on the note's penultimate sentence referring to "Cuson" -- Padilla's alias -- as independent corroboration of Padilla's participation. By stipulation, this sentence was not introduced for the truth of the matter asserted but instead "because it demonstrates the relationship [between Rodriguez and Padilla] not existing in a vacuum but in the particular context of what the jury could find is a conspiracy to suborn perjury." The reference to Padilla, within the broader context of Rodriguez and Padilla's criminal relationship, was independent evidence sufficient to corroborate the substantial hearsay evidence that Padilla was a member of the conspiracy to obstruct justice. See Bourjaily, 483 U.S. at 180. Where, as here, the hearsay evidence itself so convincingly implicates the defendant, a district court may require less corroboration to find by a preponderance of the evidence that the defendant participated in the conspiracy for purposes of admitting co-conspirators' statements against him.
 
 
 28
 The district court also found the evidence sufficiently probative to be admitted. "A district judge's Rule 403 analysis is reversible error only when it is a clear abuse of discretion." United States v. Salameh, 152 F.3d 88, 122 (2d Cir. 1998), cert. denied, 119 S.Ct. 885 (1999). Since we agree with the district court that there was sufficient evidence for a jury to find that Padilla and Rodriguez conspired to obstruct justice by witness and jury tampering, and that evidence of the conspiracy was highly probative of the appellants' consciousness of guilt, we agree that the statements in furtherance of the conspiracy were properly admitted against Padilla as well as Rodriguez.
 
 
 29
 The judgments of conviction as to Padilla and Rodriguez are affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation.