**Alfredo SERRANO, Petitioner–Appellant,**

v.

**Brian FISCHER, Superintendent, Sing Sing Correctional Facility, Respondent–Appellee.**

No. 03–2670.

United States Court of Appeals, Second Circuit.

Argued: Jan. 4, 2005.

Decided: June 20, 2005.

Georgia J. Hinde, New York, NY, for petitioner-appellant.

Emil Bricker, Assistant District Attorney for Queens County (Richard A. Brown, District Attorney, John M. Castellano, Assistant District Attorney, on the brief), Kew Gardens, NY, for ·respondent-appellee.

Before: WINTER, SOTOMAYOR and B.D. PARKER, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Petitioner-appellant Alfredo Serrano ("petitioner" or "Serrano") appeals from a judgment of the· United States District Court for the Eastern District of New York (Trager,· J.) denying a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner claims that the state trial judge violated petitioner's Sixth Amendment right to counsel when he issued orders barring all attorney-client communications during two midday recesses from petitioner's testimony. Applying the deferential standard of review required by 28 U.S.C. § 2254(d)(1), we hold that the state court decisions rejecting petitioner's claim were not contrary to clearly established Supreme Court precedent and did not unreasonably apply that precedent. Accordingly, we affirm the district court's denial of the writ.

## BACKGROUND

On the evening of May 9, 1993, petitioner stabbed and killed Miriam Molina, the mother of his young daughter. Soon

thereafter, New York state authorities charged him with two counts of Murder in the Second Degree under New York Penal Law § 125.25(1) and (2), respectively. After rejecting an opportunity to plead guilty to first-degree manslaughter in exchange for a sentence of eight and one-third to twenty-five years' imprisonment, petitioner proceeded to a jury trial in the Supreme Court of the State of New York in Queens County. A jury convicted petitioner of one count of second degree murder, and on April 27, 1995, the court sentenced him to twenty-five years to life in prison.

At trial, petitioner's counsel repeatedly clashed with the judge over a variety of matters, including the judge's rulings on certain lines of questioning and argument, the alleged bias of the judge against petitioner, and the judge's imposition of limitations on communications between petitioner and his attorney. During the testimony of various witnesses, defense counsel persisted in asking the same question multiple times even after the judge had sustained objections to the question's form or substance. Defense counsel complained several times in the presence of the jury that the prosecution was receiving favored treatment, and declared at one point, "This is not a trial, this is a tag team."

The trial judge did not conceal his exasperation with defense counsel's contumacious behavior. At one sidebar conference, the judge stated that he was "sick and tired of [defense counsel] telling [him] what the law is," and that he had "tried 17,000 more cases than [counsel] ha[d]." On another occasion, the judge told defense counsel that he was "acting like a clown," and that his actions were "abominable." At least three of defense counsel's outbursts resulted in the imposition of a $250 fine for contempt.

The dispute now before us stems from two of the many heated exchanges that took place between defense counsel and the trial judge. The first of these two exchanges occurred shortly after defense counsel had requested a five minute restroom break during his direct examination of petitioner. After defense counsel returned to the courtroom—but before the jury returned—defense counsel began to confer with petitioner while petitioner was on the stand. The judge interrupted, instructing defense counsel not to speak with his client. Counsel protested the court's order, claiming that "[t]he defendant always has a right to counsel" and that counsel did not need the court's "permission" to confer with his client. The trial judge responded by imposing a $250 fine for contempt.

The second incident forming the basis of the instant appeal occurred during petitioner's cross-examination, specifically as he was questioned about whether he knew his daughter had had nightmares the night prior to the crime, a fact central to the defense's theory of justification due to the alleged abuse of the child when under the mother's care. Upon calling a lunch recess during the testimony, the judge directed defense counsel not to speak to petitioner during the recess. Counsel responded: "I will disobey that instruction, your Honor. I will speak to my client at any point in time." Counsel added that he had an "absolute right to speak to [his] client at any point in the proceedings." In response to this defiance, the judge ordered counsel taken to jail. The judge then indicated, however, that he might reconsider his ruling and limit the bar on communications to discussions of ongoing testimony. Counsel stated that he would not discuss petitioner's testimony and attempted to clarify that the "absolute right" to which he had referred was a right to speak about "other matters." The judge expressed doubt at counsel's representa-

tion, stating: "Counsel, I don't know whether I can trust you .... [b]ecause you refuse to follow my directions during the entire course of this trial. I've had to sanction you twice." Before finally ruling, however, the judge sought further assurance that counsel would not discuss the ongoing testimony during the recess. At that point, counsel gave only indirect and evasive responses. When, for example, the judge reminded counsel "not to discuss anything about [the] trial testimony," counsel responded: "I never said I would, Judge." The conversation concluded when counsel again declared that his client "ha[d] an absolute right to speak to counsel at any stage in the proceeding." The judge not only barred attorney-client communications during the recess, but also ordered defense counsel taken into custody. The lunch recess lasted approximately ninety minutes.

Serrano appealed his conviction to the Appellate Division, arguing, *inter alia*, that the trial court's orders barring his communications with counsel had deprived him of his constitutional right to an attorney. The Appellate Division rejected his appeal on the merits, *see People v. Serrano*, 253 A.D.2d 531, 676 N.Y.S.2d 882 (2d Dep't 1998), and the New York State Court of Appeals denied his request for leave to appeal, *see* 92 N.Y.2d 985, 683 N.Y.S.2d 767, 706 N.E.2d 755 (1998) (Bellacosa, J.). Petitioner also filed a motion with the Appellate Division for reargument, and a motion with the trial court to vacate the judgment, both of which were denied.

Proceeding *pro se*, Serrano filed a petition for habeas corpus in the United States District Court for the Eastern District of New York. The petition claimed that (1) the "circus atmosphere" created by the heated exchanges between his counsel and the court resulted in the denial of a fair trial in violation of the Due Process Clause; (2) the trial court deprived him of his right to confer with his attorney during trial; (3) he received ineffective assistance of counsel; and (4) the legislature violated the Constitution by failing to include extreme emotional distress as a defense to the crime for which petitioner was convicted. Adopting the report and recommendation of Magistrate Judge Robert M. Levy, District Judge David G. Trager denied the petition in its entirety on May 16, 2003. Judge Trager also denied petitioner's motion for a certificate of appealability, finding that petitioner "ha[d] not demonstrated a substantial showing of a constitutional violation." On appeal, however, this Court granted a certificate of appealability "limited to the issue of whether Serrano was denied his Sixth Amendment right to counsel by the trial court's refusal to permit him to consult with counsel during breaks that occurred during the prosecutor's cross-examination of Serrano."[1] We also appointed counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B). We denied petitioner's appeal in all other respects.

## DISCUSSION

I. Standard of Review

We review *de novo* a district court's denial of a petition for habeas corpus.

---

**1.** Our order granting a certificate of appealability does not make entirely clear whether it encompasses both of the challenged restrictions or solely the lunchtime restriction. Because the initial, shorter restriction on attorney-client communications occurred during petitioner's direct testimony, the certificate's reference to "cross-examination" suggests that we limited ourselves to considering the lunchtime bar on communications. The certificate's reference to "breaks" however, suggests a willingness to consider both of the challenged restrictions. We resolve this ambiguity in favor of petitioner by considering his challenge to both restrictions.

*Loliscio v. Goord,* 263 F.3d 178, 184 (2d Cir.2001). Because Serrano filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, both this Court and the district court must review his claim in accordance with AEDPA's deferential standard, as codified at 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See Rosa v. McCray,* 396 F.3d 210, 219 (2d Cir.2005).

A state court adjudicates a claim "on the merits" for purposes of § 2254(d) when it "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.... even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Gutierrez v. McGinnis,* 389 F.3d 300, 304 (2d Cir. 2004) (citation and internal quotation marks omitted). The instant case meets that standard. The trial court squarely addressed and rejected petitioner's claim that he had an absolute right to consult with his attorney during midday recesses from testimony. Though the Appellate Division did not expressly refer to the Sixth Amendment claim in affirming the judg-

ment of the trial court, it dismissed as "without merit" the claims "raised in [petitioner's] *pro se* supplemental brief," which included the deprivation-of-counsel claim. *Serrano,* 676 N.Y.S.2d at 883; *see Howard v. Walker,* 406 F.3d 114, 122 (2d Cir.2005) (concluding that claims were adjudicated on the merits where state court stated that it had "considered the other contentions raised by defendant ... and conclude[d] that they [were] without merit" (citation and internal quotation marks omitted)); *see also Eze v. Senkowski,* 321 F.3d 110, 121–22 (2d Cir.2003). Thus, we may rule for Serrano only if he has demonstrated that the state courts' rejection of his deprivation-of-counsel claim resulted in a decision that (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [the Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton,* —— U.S. ——, ——, 125 S.Ct. 1432, 1438, 161 L.Ed.2d 334 (2005) (citing *Williams v. Taylor,* 529 U.S. 362, 405, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); *see also Rosa,* 396 F.3d at 219. The state court's decision involves an "unreasonable application" of Supreme Court precedent if the court "applies such precedent[ ] to the facts in an objectively unreasonable manner." *Brown,* 125 S.Ct. at 1434; *see also Williams,* 529 U.S. at 413, 120 S.Ct. 1495; *Rosa,* 396 F.3d at 219. Relief may also be available under this prong if the state court unreasonably ex-

tends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply. *See Kennaugh v. Miller,* 289 F.3d 36, 45 & n. 2 (2d Cir.2002). In applying § 2254(d)(1), however, we bear in mind that "unreasonable" is not synonymous with "incorrect." *Williams,* 529 U.S. at 410–11, 120 S.Ct. 1495. A petitioner seeking relief under the "unreasonable application" prong must demonstrate "some increment of incorrectness beyond error." *Rosa,* 396 F.3d at 219 (citation and internal quotation marks omitted). Moreover, the range of judgments that can be deemed "reasonable" may vary with the nature of the rule in question. *See Yarborough v. Alvarado,* 541 U.S. 652, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004). Thus, while very specific rules may not permit much leeway in their interpretation, the same is not true of more general rules, the meaning of which "must emerge in application over the course of time." *Id.* "The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Id.*

■ Where state courts summarily reject a claim on the merits without explanation, "we must focus on the ultimate decisions of those courts, rather than on the courts' reasoning," to determine whether the decisions were contrary to, or an unreasonable application of, Supreme Court precedent. *Aeid v. Bennett,* 296 F.3d 58, 62 (2d Cir.2002). But where, as here, the state trial court clearly indicates its reasons for rejecting a claim, we may apply a rebuttable presumption that the state appellate courts' "later unexplained orders upholding [the trial court's] judgment . . .

rest upon the same ground" provided by the trial court. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *see also id.* at 804, 111 S.Ct. 2590 ("The maxim is that silence implies consent, not the opposite—and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below.").[2]

Under § 2254(d)(2), a federal court may also grant habeas relief to a state prisoner if the state's adjudication of the claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Here, however, petitioner does not challenge the state courts' factual findings; he challenges only the courts' conclusions of law. Subsection (2) of § 2254(d) is therefore inapplicable, and we conduct our analysis solely under § 2254(d)(1). *See Larrea v. Bennett,* 368 F.3d 179, 182–83 (2d Cir.2004).

## II. Governing Precedent

■ In light of § 2254(d)(1)'s restrictions, our analysis of petitioner's claims focuses on the two Supreme Court cases which have addressed the Sixth Amendment right to counsel in the specific context of defendants who, like Serrano, were prohibited by a judge from conferring with their attorney during a recess from their testimony. *See Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989); *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

In *Geders,* the Supreme Court held that a trial court deprived a defendant of counsel in violation of the Sixth Amendment when it ordered the defendant not to con-

---

**2.** We do not address whether or to what extent we are required to consider *only* the rationale of the last state court to articulate its reasoning. Here, we reach the same result whether we focus on the ultimate decision of the state courts or on the specific reasoning of the state trial court.

sult with his attorney during a seventeen-hour overnight recess that the court had called during the defendant's cross-examination. *See id.* at 81, 91–92, 96 S.Ct. 1330. The Court acknowledged that the trial judge, as "governor of the trial . . . must have broad power to cope with the complexities and contingencies inherent in the adversary process." *Id.* at 86, 96 S.Ct. 1330 (citation and internal quotation marks omitted). This includes a "broad power to sequester witnesses before, during, and after their testimony," in order to restrain, *inter alia,* "improper attempts to influence the testimony" or tailoring of the testimony to that of earlier witnesses. *Id.* at 87, 96 S.Ct. 1330. Because the witness in *Geders* was also the defendant, however, the Supreme Court ruled that the Sixth Amendment sharply circumscribed the trial judge's power to impose prolonged restrictions on communication between the witness and his attorney. *Id.* at 88–91, 96 S.Ct. 1330. An absolute bar on attorney-client communications during a seventeen-hour overnight recess, the Court held, violated the constitutional right to counsel. *Id.* at 91, 96 S.Ct. 1330.

In so holding, the Court observed that an accused and his or her counsel commonly use overnight recesses to review the day's events and make important tactical decisions:

> The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance.

*Id.* at 88, 96 S.Ct. 1330.

The Court also emphasized that "[t]here are a variety of ways to further the purpose served by sequestration without placing a sustained barrier to communication between a defendant and his lawyer." *Id.* at 91, 96 S.Ct. 1330. The trial judge, for example, could directly order counsel not to discuss the ongoing testimony during the break or could reschedule testimony to avoid long recesses. The prosecutors could also question the defendant during cross-examination regarding whether coaching had occurred during the recess. *See id.* at 89–90, 96 S.Ct. 1330. While these alternatives might not always prove effective, the conflict between "the defendant's right to consult with his attorney during a long overnight recess" and "the prosecutor's desire to cross-examine the defendant without the intervention of counsel . . . must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Id.* at 91, 96 S.Ct. 1330.

Thirteen years later, the Supreme Court considered whether the *Geders* rule applied to a defendant whom the trial court had ordered not to consult with his attorney during a fifteen-minute break from direct examination. *See Perry,* 488 U.S. at 273–74, 109 S.Ct. 594. The *Perry* Court reiterated that an accused's constitutional right to counsel is of "fundamental importance," *id.* at 279, 109 S.Ct. 594, but emphasized that there is no constitutional right to discuss testimony with counsel while that testimony is in progress, *id.* at 281, 284–85, 109 S.Ct. 594. The Court further explained that when a defendant assumes the role of witness, "the rules that generally apply to other witnesses . . . are generally applicable to him [or her] as well." *Id.* at 282, 109 S.Ct. 594. Thus,

"during a brief recess in which there is a virtual certainty that any conversation between the witness and the lawyer would relate to the ongoing testimony," the trial judge has "the power to maintain the status quo" by briefly barring attorney-client communications. *Id.* at 283–84, 109 S.Ct. 594. The Court held that "[t]he interruption in *Geders* was of a different character because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony." *Id.* at 284, 109 S.Ct. 594. In contrast, during a "short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice," and the trial court may bar consultation. *Id.* The *Perry* Court acknowledged that the "line between the facts of *Geders* and the facts of [*Perry* ] [was] a thin one." *Id.* at 280, 109 S.Ct. 594. Nevertheless, it was "a line of constitutional dimension." *Id.*

In *Morgan v. Bennett,* 204 F.3d 360 (2d Cir.2000), we interpreted *Geders* and *Perry* as together

> stand[ing] for the principle that [a] court should not, absent an important need to protect a countervailing interest, restrict the defendant's ability to consult with his [or her] attorney, but that when such a need is present and is difficult to fulfill in other ways, a carefully tailored, limit-

ed restriction on the defendant's right to consult counsel is permissible.

*Id.* at 367.[3] In accordance with that principle, we held in *Morgan* that the state court decision was not "contrary to" or an "unreasonable application of" Supreme Court precedent where the court had ordered that defense counsel not disclose to the defendant that a certain witness was planning to testify. *Id.* at 362–63, 368. The trial judge in *Morgan* had issued the order because of allegations that associates of the defendant had threatened and intimidated the witness. *Id.* Similarly, in *United States v. Padilla,* 203 F.3d 156 (2d Cir.2000), we held—in a direct criminal appeal not involving § 2254(d)—that a district court could, consistent with *Geders* and *Perry,* order defense counsel not to reveal to their clients an ongoing investigation into a defendant's alleged involvement in jury and witness tampering. *Id.* at 158, 160.

Other lower courts have diverged from this Court and from each other in their understanding of *Geders* and *Perry.* Though this Court has explained, for example, that "[t]he difference between *Perry* and *Geders* is not the quantity of communication restrained but its constitutional quality," *Padilla,* 203 F.3d at 160, the New York Court of Appeals concluded that "the critical factor in determining whether a violation of the right to counsel occurred

---

**3.** We recognize that pursuant to the terms of § 2254(d)(1), our own previous interpretations of *Geders* and *Perry* do not control the outcome of the instant case. *See Williams,* 529 U.S. at 412, 120 S.Ct. 1495. On the other hand, our precedent remains binding on us insofar as our cases establish what constitutes a "[ ]reasonable application" of *Geders* and *Perry* under § 2254(d)(1). In other words, while New York state courts may be free to adopt reasonable interpretations of *Geders* and *Perry* that differ from our own, nothing in AEDPA authorizes this Court to

ignore its own precedents in determining what constitutes a "[ ]reasonable application" of Supreme Court law under § 2254(d)(1).

Moreover, even non-binding case law may be instructive in determining what constitutes a reasonable application of the law under § 2254(d)(1). This is not to say that a given interpretation is reasonable merely because one court adopts it. *See Williams,* 529 U.S. at 410, 120 S.Ct. 1495. Nothing in § 2254(d)(1) precludes us, however, from looking to our prior non-binding decisions or decisions of other courts for persuasive guidance.

... is the length of time dividing the defendant's access to counsel contemplated by the trial court's ruling," *People v. Joseph,* 84 N.Y.2d 995, 998, 622 N.Y.S.2d 505, 646 N.E.2d 807 (1994). *Compare id., with United States v. McLaughlin,* 164 F.3d 1, 18 (D.C.Cir.1998) (Tatel, J., dissenting) (arguing that even a fifteen-minute bar on attorney-client communications conflicts with Supreme Court precedent when it precludes defense counsel from "obtain[ing] information from their clients prior to making important tactical decisions"). Courts have also disagreed with respect to whether an overnight restriction on communications that only bars discussion of a defendant's testimony will satisfy the demands of the Sixth Amendment under *Geders* and *Perry.* *Compare United States v. Cobb,* 905 F.2d 784, 791–92 (4th Cir.1990) (holding that restriction on attorney-client communications during weekend recess from cross-examination violated Sixth Amendment as interpreted in *Geders* and *Perry* even where restriction only barred discussion of "ongoing testimony"), *with Webb v. State,* 663 A.2d 452, 458–59 (Del.1995) (explaining that order restricting attorney-client communications during an overnight recess before the start of cross-examination would not violate Sixth Amendment where the order only barred discussion of defendant's testimony). Particularly relevant to the instant case, of course, is the question of whether a bar on attorney-client communications during a one or two hour midday recess is more analogous to the facts of *Geders* or to those of *Perry;* this question too has failed to produce a consensus. *Compare Albrecht v. Horn,* 314 F.Supp.2d 451, 476 (E.D.Pa.2004) ("[I]n the context of an ongoing cross-examination, a recess of an hour or two is more akin to the 15–minute recess in *Perry* than the overnight recess in *Geders.*"), *with People v. Enrique,* 165 A.D.2d 13, 566 N.Y.S.2d 201, 211 (1st Dep't

1991) (Milonas, J., dissenting) ("[A] lunch recess, particularly a two-hour one, is plainly something more than the brief fifteen-minute break that occurred in [*Perry* ] and ... constitutes a more severe curtailment of the right to counsel."); *see also Geders,* 425 U.S. at 89 n. 2, 96 S.Ct. 1330 (declining to decide whether *Geders* rule would apply to cases involving "brief" recesses and citing as an example of such a case *United States v. Leighton,* 386 F.2d 822 (2d Cir.1967), which involved an eighty-five minute recess).

Given the tenuity of the constitutional line drawn in *Geders* and *Perry,* this diversity of interpretations comes as no surprise. Rather than create a bright-line rule, the Supreme Court established an intensely context-specific inquiry, the precise contours of which have yet to emerge. In such circumstances, where the governing rule remains so roughly defined, we are less likely to conclude that a given interpretation or application of Supreme Court law is "contrary to" or an objectively "unreasonable application of" Supreme Court precedent for purposes of § 2254(d)(1). *See Yarborough,* 124 S.Ct. at 2149 ("The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."); *Wade v. Herbert,* 391 F.3d 135, 145 (2d Cir.2004) ("Where the Supreme Court has spoken only in general terms ... various outcomes may be reasonable applications of the Court's precedents.").

### III. Application of Supreme Court Precedent

The state trial court's limitation on attorney-client communications did not result in a decision that was "contrary to" *Geders* or *Perry.* *See Williams,* 529 U.S. at 406, 120 S.Ct. 1495 (noting that "word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in char-

acter or nature,' or 'mutually opposed.' " (citation omitted)). Nor did the state court "confront[ ] a set of facts that [was] materially indistinguishable from" *Geders* or *Perry* "but reach[ ] a different result." *Brown,* 125 S.Ct. at 1438. Even the longer of the two recesses at issue in the instant case lasted less than ten percent of the time of the recess in *Geders.*

The outcome of the case thus hinges on whether the state courts' decisions applied the *Geders* and *Perry* principles in an objectively unreasonable manner. As discussed above, we may find objective unreasonableness where the state courts unreasonably extend a Supreme Court precedent or unreasonably fail to extend a legal rule to a context in which the rule reasonably should apply. *See Kennaugh,* 289 F.3d at 45 & n. 2. No such unreasonable application of the law took place here, however. With regard to the first of the orders directing counsel not to confer with his client, the bar on communications was only momentary; *immediately* after chastising the defense attorney and conferring with counsel for both parties regarding the propriety of defense counsel's actions, the judge brought the jury back into the courtroom and directed that the testimony continue. The bar on communications was thus even shorter in duration than the restriction at issue in *Perry,* and it was "appropriate to presume that nothing but the testimony w[ould] be discussed." *Perry,* 488 U.S. at 284, 109 S.Ct. 594. With regard to the longer, ninety-minute bar on attorney-client communications during lunch, the trial judge imposed the restriction only after indicating to counsel that he was willing to limit the ban to discussions of ongoing testimony if counsel gave sufficient assurance to the judge that he was willing to comply

with such an order.[4] Counsel squandered that opportunity by providing coy and evasive responses, and by again declaring that petitioner "ha[d] an absolute right to speak to counsel at any stage in the proceeding." Given counsel's repeated defiance of the trial court's rulings, and his refusal to provide a consistent, straightforward guarantee that he would comply with a limited restriction on discussing ongoing testimony, the judge was again entitled to presume that testimony would be discussed during the recess, particularly in that the lunch recess interrupted a key moment in the cross-examination, when defense counsel had an incentive to influence his client's testimony. *See id.; see also id.* at 283–84, 109 S.Ct. 594 ("[T]he judge must ... have the power to maintain the status quo during a brief recess in which there is a virtual certainty that any conversation between the witness and the lawyer would relate to the ongoing testimony.").

In his brief, petitioner takes issue with the trial court's reliance on *People v. Enrique,* a state court decision rejecting a Sixth Amendment challenges that arose out of a two-hour midday bar on attorney-client communications. *See Enrique,* 165 A.D.2d 13, 566 N.Y.S.2d 201, 206–07 (1st Dep't 1991), *aff'd,* 80 N.Y.2d 869, 870, 587 N.Y.S.2d 598, 600 N.E.2d 229 (N.Y.1992) (adopting Appellate Division's reasoning). The trial court in the instant case referred to *Enrique* in disregarding counsel's objection to the restrictions on communication with petitioner during the lunch recess. Petitioner now argues that the court's reliance on *Enrique* was unreasonable because, petitioner contends, *Enrique* was wrongly decided. Petitioner's argument is misguided.

---

4. The record thus belies petitioner's contention that the trial judge failed to consider

alternatives to an outright ban on all communications.

According to petitioner, *Enrique* "simplistically concluded that any luncheon recess, regardless of the length, should in every case be considered the sort of 'limited interruption' in a defendant's testimony and right to counsel that *Perry* permits, unless counsel identifies some valid reason for wishing to consult with his client." This is an inaccurate reading of *Enrique*, which did not state its ruling in such broad terms. The *Enrique* court explained that if a defense attorney gave "any indication" to the judge that consultation with the defendant was necessary "because of some unexpected development or for other valid reasons," it might be an abuse of discretion to bar attorney-client communications even during a "brief recess." *Id.* at 207. The court rejected the Sixth Amendment claim in that case because there was no such indication that consultation was necessary; on the contrary, counsel had conceded that he intended to discuss the ongoing testimony during the recess. *See id.* at 205 ("[T]he colloquy between court and counsel merely served to confirm that counsel wished only to discuss defendant's testimony with him, a matter as to which defendant had no right to confer while he was testifying."). In the instant case, as in *Enrique*, the trial judge temporarily barred attorney-client communications during a lunchtime recess only after counsel failed to guarantee that he would refrain from discussing the defendant's ongoing testimony during the recess. This is not to say that we adopt *Enrique's* holding or agree with its rationale in every particular. We merely hold that the trial judge's reliance on *Enrique* in the instant case did

not result in a decision that was "contrary to" or "an unreasonable application" of Supreme Court law. 28 U.S.C. § 2254(d)(1).

Petitioner observes that the trial judge "did not consistently sequester other witnesses during recesses in their testimony, and did not even prevent counsel from consulting with petitioner during later breaks in his cross-examination," including a weekend recess. In petitioner's view, this demonstrates that "the judge could not have been that concerned about the prospect of improper witness coaching." As "governor of the trial," however, *Geders*, 425 U.S. at 86, 96 S.Ct. 1330, the judge is entitled to determine the points at which there is a greater risk of improper witness coaching that justifies sequestering a witness or restricting attorney-client communications, within the limits established by the Constitution. Nothing in *Geders* requires a trial judge to adopt an all-or-nothing approach in order to comply with the Sixth Amendment.

Petitioner also claims that the restrictions on his communications with his attorney eliminated his last chance to discuss entering a guilty plea to a lesser crime, because the prosecution later that same day withdrew its plea offer. Even if this argument is relevant to the question of whether the district court unconstitutionally deprived petitioner of counsel,[5] petitioner has given no reason to believe that the guilty plea was a topic that he and his attorney had actually intended to discuss. Indeed, his claim on appeal is inconsistent with his brief to the Appellate Division, in which he conceded that he did not know

**5.** A defendant need not show prejudice to establish a deprivation of counsel claim under *Geders* or *Perry*. *See Perry*, 488 U.S. at 278–79, 109 S.Ct. 594 ("[A] showing of prejudice is not an essential component of a violation of the rule announced in *Geders*."); *see also id.* at 280, 109 S.Ct. 594 ("[A]ctual or constructive denial of assistance of counsel altogether is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." (internal citation and quotation marks omitted)).

what topics he would have discussed with his attorney during the break.

 Finally, petitioner argues that the district court should not have punished him for his attorney's unruly behavior. While acknowledging that his counsel's "excesses" were "improper," he claims that they were "not so grave that they justified the trial court's interference with petitioner's right to counsel." At its core, this argument is either a reprise of petitioner's claim that the trial judge denied petitioner a fair trial in violation of the Due Process Clause by allowing his disagreements with petitioner's counsel to create a "circus atmosphere" at trial, or it is simply an ineffective assistance of counsel claim based on trial counsel's misconduct before the judge. Neither claim, however, is properly before this Court. In addressing the due process claim, the district court adopted Magistrate Judge Levy's finding that the trial judge's rulings were based primarily on defense counsel's own impertinence and did not reflect improper judicial bias. Both the district court and this Court declined to grant a certificate of appealability ("COA") on this issue and we therefore do not consider it further. *See Sweet v. Bennett,* 353 F.3d 135, 138 n. 5 (2d Cir.2003); *Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001) (per curiam). To the extent that petitioner's argument is that his trial attorney's conduct itself deprived him of a fair trial by antagonizing the court to petitioner's detriment, we hold that the proper vehicle for addressing this concern is an ineffective assistance of counsel claim. *See, e.g., United States v. Venturella,* 391 F.3d 120, 135 (2d Cir.2004) (explaining that a defendant may establish a claim of ineffective assistance of counsel where (1) counsel failed to "function[ ] as

the counsel guaranteed the defendant by the Sixth Amendment; and (2) the deficient performance prejudiced the defense"). Petitioner, however, never sought (or received) a COA on this issue.[6] Accordingly, we do not consider it. *See Sweet,* 353 F.3d at 138 n. 5; *Smaldone,* 273 F.3d at 139.

## CONCLUSION

In concluding, we emphasize the narrowness of our holding. We do not hold that a ninety-minute bar on attorney-client communications during a recess from a defendant's testimony necessarily falls within the rule announced in *Perry.* Nor do we hold that it would constitute a reasonable application of Supreme Court precedent under § 2254(d)(1) to bar attorney-client communications during a lunch recess in circumstances other than those present in this case. Finally, we do not express any opinion with regard to whether petitioner's trial counsel was constitutionally ineffective. We only hold that in light of defense counsel's defiant behavior at trial, the state court decisions rejecting petitioner's deprivation-of-counsel claim were not contrary to Supreme Court precedent and did not involve an unreasonable application of that precedent within the meaning of 28 U.S.C. § 2254(d)(1).

For the foregoing reasons, we AFFIRM the district court judgment denying petitioner a writ of habeas corpus.

---

**6.** While petitioner did claim ineffective assistance of counsel before the district court, the claim was not based on his attorney's contu-

macious conduct at trial, but rather was limited to counsel's strategic decisions in presenting multiple defenses to the jury.