Gregory CHERRY, Petitioner,

v.

UNITED STATES of America, Respondent.

No. S01 94 Cr. 313(CSH).

United States District Court, S.D. New York.

June 13, 2007.

Gregory Cherry, Petersburg, VA, pro se.

Parvin Moyne, Asst. U.S. Atty., U.S. Attorney's Office, S.D.N.Y., New York, NY, for U.S.

HAIGHT, Senior District Judge.

■ Defendant Gregory Cherry, currently incarcerated, applies *pro se* for the issuance by the Court of a corrected judgment. Specifically, Cherry prays that the date of "09/30/1994" which appears in the judgment under the caption "Date Offense Concluded" with respect to Count One of the superseding indictment be changed to March 30, 1993. The government opposes Cherry's application, arguing that the Court is without jurisdiction to grant it and, in the alternative, that the application lacks merit.

Cherry's application does not cite any authority. The government's opposing letter brief discusses Rules 35 and 36 of the Federal Rules of Criminal Procedure. Rule 35(a) provides: "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." The government argues that Cherry's application, dated November 27, 2006, is untimely under the Rule, as it surely would be, the judgment being dated September 18, 1998. In consequence, the government argues, the Court lacks jurisdiction. That would be true if Cherry were moving to correct his *sentence.* But I do not construe his application in that manner. Rather, I conceive Cherry's application as one to correct a clerical error in the *judgment,* quoted *supra.* As such, the application is governed by Rule 36, which provides in full:

After giving notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record resulting from oversight or omission.

The Court gave the government appropriate notice of Cherry's application by sending the United States Attorney a copy of it and directing a response, which is now at hand. Unlike Rule 35(a), the government cannot contend that Cherry's Rule 36 application is untimely, since the Rule provides that the Court may act under it "at any time," and it necessarily follows that the Court has jurisdiction to do so.

■ In construing and applying Rule 36, Second Circuit jurisprudence distinguishes between an error made by a clerk and an error made by a judge. The former may be corrected under Rule 36; the latter may not. In *United States v. Burd,* 86 F.3d 285, 288 (2d Cir.1996), the Second Circuit said:

Rule 36 authorizes a court to correct only clerical errors in the transcription of judgments, not to effectuate its unexpressed intentions at the time of sentencing. Rule 36 is not a vehicle for the vindication of the court's unexpressed sentencing expectations, or for the correction of errors made by the court itself. . . . A clerical error must not be one of judgment or even one of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might make, mechanical in nature. An amanuensis is one employed to write from dictation or to copy manuscript.

(citations and internal quotation marks omitted). *Burd* held that, because of these distinctions, the district court lacked jurisdiction under Rule 36 to accomplish its sentencing objective by rearranging the concurrent and consecutive sentences in a multi-count conviction. "The mistake made here," the court of appeals reasoned, was not that of a humble amanuensis; "the correction required more than substituting a right number for a wrong number. The Amended Judgment changed the internal structure of the sentence." *Id.*

■ To determine the category into which Cherry's case falls, the record must be consulted. On September 30, 1994, a grand jury in this district returned a 78-count indictment charging seventeen individuals, including Cherry, with, *inter alia,* participating in a racketeering enterprise, distributing narcotics, committing violent acts including murder and kidnapping in aid of racketeering, and carrying firearms during crimes of violence. On February 28, 1995, Cherry pleaded guilty to Counts One and Seventy–Three of the superseding indictment. Count One charged conspiracy to commit racketeering activity. Count Seventy–Three charged carrying a firearm during a crime of violence. The government signified its willingness to accept Cherry's plea in a letter dated February 28, 1995, signed by an AUSA and countersigned by Cherry and his attorney. The government's letter described Count One as charging Cherry "with his participation in C & C, a racketeering enterprise, though the commission of racketeering acts of conspiracy to murder Javier Torres and Jesse Ayala and conspiracy to murder Lourdes Cintron, from in or about 1990 to on or about *March 30, 1993.*" Letter at 1 (emphasis added). March 30, 1993 "is apparently the date upon which Cherry was taken into custody." Government Letter Brief at 2. During the Court's allocution of Cherry before accepting his plea, I said to him:

THE COURT: Count One charges you with violating a particular section or sections of federal law which we call the RICO statute. The indictment charges that during specified times in the 1990s, you were a member of an organization called C & C which the government claims and charges was a racketeering enterprise as that term is described in the statute, and while as a member of that racketeering enterprise, you committed certain racketeering acts, that is

to say, conspiring to murder individuals called Javier Torres and Jesse Ayala, and conspiring to murder an individual called Lourdes Cintron, and that the period of time is between 1990 *and March 1993.*

Tr. at 15 (emphasis added). The Court's reference to "March 1993" reflected the statements implicit in Count One of the superseding indictment and the government's February 28, 1995 plea agreement letter that Cherry's participation in the charged conspiracy ended with his arrest on March 30, 1993.

Given this record, no basis appears for the selection of September 30, 1994 by a court clerk or whatever amaneunsis typed up the judgment as the "Date Offense Completed" with respect to Count One of the superseding indictment. That is the date the superseding indictment was filed, a date that has no relevance to and is not probative of the period of time the charged conspiracy to which Cherry pleaded guilty existed or he participated in it.

I am not persuaded by the government's effort to salvage this incorrect date in the judgment by references to later conduct by Cherry and other conspirators. To be sure, certain C & C members engaged in post-arrest bad acts, *see United States v. Padilla,* 203 F.3d 156 (2d Cir.2000), and Cherry himself was an actor in subsequent litigation involving other members, *see United States v. Camacho,* 353 F.Supp.2d 524 (S.D.N.Y.2005), but the government's conclusory arguments fall well short of showing that the particular conspiracy to which Cherry pleaded guilty or his participation in it extended beyond March 30, 1993, the date of his arrest.

It follows that this case presents a clerical error, uncomplicated by any error of the Court. To paraphrase *Burd,* the necessary correction will not change "the in-

ternal structure of the sentence"; it does no more than substitute "a right date for a wrong date." Accordingly, the error may be corrected under Rule 36. The Clerk of the Court is directed to enter an amended and corrected judgment consistent with this opinion.[1]

It is SO ORDERED.

---

1. The motion papers do not state specifically why Cherry requests this relief or how granting it will benefit him. I infer, however, that it may reduce the length of his term of imprisonment, basing that inference on Cherry's request in his November 27, 2006 letter that the corrected judgment be sent "to my case manager for unit A–North Petersburg Va." Cherry's application included only page 1 of the Court's judgment. Page 1 recites that "[t]he defendant is sentenced as provided in pages 2 though 7 of this judgment." Page 2, captioned "Imprisonment," recites that Cherry was sentenced to a total term of 20 years on Count One, "time served to count from 3/30/93," the date of Cherry's arrest on the charge. There is an arguable inconsistency between that date and the date of "09/30/1994" listed on page 1 of the judgment as the "date offense concluded." This inconsistency may have created an uncertainty on the part of the Bureau of Prisons which Cherry seeks to resolve. Not infrequently, cases under Rule 36 arise out of expressed doubts harbored by the Bureau. *See, e.g., United States v. Seavey,* 445 F.Supp.2d 80, 81 (D.Me. 2006) ("The requested change [in the judgment] concerning the sentencing language was provoked by a Bureau of Prisons inquiry to both the Court and the government, the Bureau being uncertain how to implement the court's sentence...."). I think it likely that Cherry is having a comparable dialogue with the BOP staff at his place of incarceration. However, whatever Cherry's purpose, he is entitled to Rule 36 relief for the reasons stated in text.