05-2630-cr
United States v. Triumph Capital Group, Inc.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2006

(Argued: September 20, 2006                    Decided: May 25, 2007)

Docket No. No. 05-2630-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

– v.–

TRIUMPH CAPITAL GROUP, INC., FREDERICK W. McCARTHY, CHARLES B.
SPADONI, LISA A. THIESFIELD

*Defendants*,

BEN F. ANDREWS,
*Defendant-Appellant*.

_____

Before: CALABRESI, POOLER, and B.D. PARKER, *Circuit Judges*.

_____

Appeal from a judgment of conviction of the United States District Court for the District of
Connecticut (Burns, *J.*).  Affirmed

_____

JEREMIAH DONOVAN, Old Saybrook, Conn.

*for Defendant-Appellant.*

WILLIAM J. NARDINI, Assistant United States Attorney (David A. Ring, Assistant United States Attorney, *on the brief*), *for* John H. Durham, Acting United States Attorney for the District of Connecticut, New Haven, Conn., *for Appellee.*

_____

CALABRESI, *Circuit Judge*:

Defendant-Appellant Ben F. Andrews ("defendant" or "Andrews") appeals from a judgment of conviction entered on June 9, 2005, in the United States District Court for the District of Connecticut (Burns, *J.*). Following a jury trial, Andrews was convicted of nine counts, including bribery, fraud, money-laundering, and false-statement charges, for his role in former Treasurer of the State of Connecticut Paul Silvester's allegedly unlawful investment of state pension funds. On appeal Andrews raises a variety of challenges to the conviction. All but one of these challenges are governed by settled law, and we consider and reject these challenges in a summary order accompanying this decision. We write here to address Andrews' allegations that the district court violated Andrews' Sixth Amendment right to counsel when it placed some restrictions on communication between him and his counsel.

In *Geders v. United States*, 425 U.S. 80 (1976), the Supreme Court held that a court order preventing a testifying defendant from consulting his counsel during an overnight recess violated the Sixth Amendment. Thirteen years later, in *Perry v. Leeke*, 488 U.S. 272 (1989), the Court held that barring all communications between a defendant and his counsel during a fifteen minute break in the defendant's testimony was constitutionally permissible. Ever since, courts have struggled to define the constitutional line between *Geders* and *Perry*. *See Serrano v. Fischer*, 412 F.3d 292 (2005). We return to this inquiry today, and hold that, in the particular circumstances of this case, the court

orders did not violate Andrews' constitutional right to assistance of counsel. Accordingly, we affirm the judgment of conviction.

## I. BACKGROUND

At the end of Andrews' first day of cross-examination, on October 22, 2003, his defense counsel, Jeremiah Donovan ("Donovan"), informed the district court that he intended to "talk to [the defendant] about his testimony" and that "[he] just want[ed] to make sure that no one views that as any kind of a violation of the rules." When the Government opined that such discussions should not be allowed, the district court ordered, over the defense's objection, that defense counsel not talk with the defendant about his testimony during the evening recess. The court adjourned immediately thereafter, at approximately 5:10 pm. The parties have largely stipulated to the events that followed, and, unless otherwise noted, the facts described below are undisputed.

The Government quickly realized that the court order might raise constitutional concerns, and within twenty minutes, informed both the court and defense counsel, who was still in the courthouse, that it would be researching the propriety of the restriction and would request a conference call with the Court later that evening to rescind the ban if its research showed that removing the ban was appropriate. The parties dispute whether Andrews was also still in the courthouse at the time his counsel was notified.[1] Defense counsel stipulated, however, that he had Andrews' cell phone number and could have called Andrews then, at 5.30 pm, to notify him that the order might be rescinded, and that counsel did not do so.

---

[1] Defense counsel told the district court that Andrews had already left. The attorney for the Government responded that he remembered clearly that Andrews was still in the courtroom at the time.

3

Shortly after, the Government decided that it would be prudent to move to have the order rescinded. *United States v. Santos*, 201 F.3d 953 (7th Cir. 2000), which held that an order barring a defendant from discussing his testimony with his attorney overnight was unconstitutional, cast doubt on the propriety of the court's order.[2]  At the district court's request, the Government attempted to arrange a conference call between the Government, defense counsel, and the court. The Government first reached Donovan between 6:00 and 7:00 pm, but he was on a train and poor reception precluded holding the conference call at that time. All parties and the court were successfully reached at 8:00 pm, and, after a short conference call, the court rescinded its order, so that defense counsel was no longer barred from talking with his client. According to defense counsel, at the time of the conference call he was in a pizza restaurant.  Defense counsel did not talk to his client that evening after the conference.  He maintained that it was too late, that he did not have the files he needed, and that he wouldn't have been able to reach Andrews because Andrews was "seeking spiritual guidance" at that time.[3]

The next morning, in an attempt to rectify the effects of the restriction, the court recessed before the day's testimony began. This was meant to give Andrews as much time as he needed to discuss the case with his attorney.  Defense counsel argued that morning conversations would not be equivalent to being able to talk with Andrews immediately after the examination had concluded the day before.  Counsel stated that his recollection of the prior day's testimony was "hazy" and that he had not taken notes on the assumption that he would be able to talk with Andrews immediately

---

[2]  The Government, noting that the Second Circuit had not spoken on the issue, took the position that it had asked the Court to rescind its order as early as possible to avoid "possible claims of error" even though it believed that *Santos* was wrongly decided.

[3]  The parties stipulated that Andrews was in a prayer meeting—and his cell phone was turned off—from 7:30 to 9:30 that evening.

during the evening recess. He did not, however, request an opportunity to obtain and review the prior day's daily transcript, which the parties acknowledged (at oral argument) was generally available. And after consulting with his client for forty-five minutes, defense counsel agreed that they had had "sufficient time." Nevertheless, the defense moved for a mistrial, which was denied.

Although the overnight ban on discussion of testimony was not renewed, the district court did order that, during daytime breaks in the cross-examination, including the one-hour lunch breaks and shorter mid-afternoon and morning breaks, the defense counsel could not speak to the defendant about his testimony. The court emphasized, however, that they could talk about "other matters related to the trial."

On July 8, 2004, in a late-filed motion for a new trial, the defense renewed its objections to the restrictions on communication. The district court denied the motion as untimely, but also found, in the alternative, that there had been no constitutional violation. The court reasoned that its "order to Defendant not to discuss his testimony during an overnight recess, rescinded after approximately three hours, is more analogous to the brief recess and narrowly tailored prohibition in *Perry* than to the overnight denial of assistance of counsel in . . . *Geders*." And it found that the ban on discussing testimony during the daytime breaks was "explicitly permitted by *Perry*, especially where Defendant has not been barred from discussing other aspects of his defense case."

The defendant timely appealed.

## II. DISCUSSION

Under the Sixth Amendment, a criminal defendant "is guaranteed not just the right to be represented by counsel but the right to the effective assistance of counsel." *Morgan v. Bennett,* 204 F.3d 360, 365 (2d Cir. 2000) (citing *United States v. Cronic*, 466 U.S. 648, 654 (1984); *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984)). Effective assistance of counsel requires that the defendant be allowed to communicate with his or her attorney. For as the Supreme Court has long held, "the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." *Geders*, 425 U.S. at 89 (citing *Powell* v. *Alabama,* 287 U.S. 45, 68-69 (1932); *Argersinger* v. *Hamlin,* 407 U.S. 25, 31-36 (1972); *Gideon* v. *Wainwright,* 372 U.S. 335, 343-345 (1963)).

Not all restrictions on communication between a defendant and his counsel are constitutionally prohibited, however. In certain contexts there can be an "important need to protect a countervailing interest," which may justify a restriction on the defendant's ability to consult with his attorney if the restriction is "carefully tailored" and "limited." *Morgan*, 204 F.3d at 367. And, as we elaborate below, even some unjustified restrictions may be so trivial that they do not amount to a constitutional violation.

### A.

Claims that a defendant's constitutional rights were violated by a court order restricting communication between the defendant and his attorney are governed by two Supreme Court precedents, *Geders v. United States*, 425 U.S. 80 (1976), and *Perry v. Leeke*, 488 U.S. 272 (1989). In *Geders*, the Court held that "an order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged

6

upon his right to the assistance of counsel guaranteed by the Sixth Amendment." 425 U.S. at 91. The Court recognized that district courts have broad discretion to limit witnesses' communication while they are testifying in order to prevent improper influence and coaching, but concluded that when the witness is also the defendant, the Sixth Amendment significantly curtails this discretion. *Id.* at 88.

The Court found that overnight recesses "are often times of intensive work," for the defendant and his counsel, and explained that there were a variety of legitimate purposes of such communication including: (1) making "tactical decisions" and reviewing strategies; (2) obtaining information from the defendant made relevant by the day's testimony; (3) allowing the defense counsel an opportunity to "pursue inquiry along lines not fully explored earlier"; and (4) "[a]t the very least, . . . giv[ing] the defendant a chance to discuss with counsel the significance of the day's events." *Id.* And the Court noted that, rather than barring overnight communication between a testifying defendant and his counsel, the district court could employ other means to guard against excessive influence on the testimony, such as allowing uninterrupted cross-examination to delve into matters like coaching. *Id.* at 88. Moreover, *Geders* concluded that

> [t]o the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel.

*Id.* at 91.

Thirteen years later, in *Perry*, the Court found that barring attorney-client communications during a fifteen minute break in the defendant's testimony did not raise the same constitutional concerns as the overnight ban in *Geders*. The Court admitted that the line between the facts of

7

*Geders* and *Perry* was a "thin one," but found that it was "a line of constitutional dimension." *Perry*, 488 U.S at 280. According to *Perry*, the "distinction rests . . . on the fact that when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying," even if no improper coaching is involved. *Id.* at 281. Thus, "in a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice." *Id.* at 284.

 *Perry* distinguished *Geders* because "the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain." *Id.* *Perry* affirmed that it "is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess." *Id.* And this remains so, even though "such discussions will *inevitably include some consideration of the defendant's ongoing testimony . . . .*" *Id.* (emphasis added).

 In this Circuit, we have emphasized that "the difference between *Perry* and *Geders* is not the quantity of communication restrained but its constitutional quality." *United States v. Padilla*, 203 F.3d 156, 160 (2d Cir. 2000); *see also Serrano v. Fischer*, 412 F.3d 292, 299-300 (2d Cir. 2005) (distinguishing this Court's focus on the "constitutional quality" of the communication from that of other courts, which have held that the critical factor distinguishing *Perry* and *Geders* is the length of time in which access to the defendant's counsel is prevented). Thus, under our precedents, the dispositive factor in *Perry* was the *Perry* Court's assumption it was "appropriate to presume that nothing but the testimony w[ould] be discussed," 488 U.S at 284, and that therefore the ban on

8

communication would not meaningfully interfere with constitutionally protected communication. Given this assumption, the restriction was sufficiently limited to be constitutionally permissible.[4] *Morgan*, 204 F.3d 360.

This understanding of *Geders* and *Perry* provides no "bright-line rule" for determining when, and what kind of, restrictions on the communication between a defendant and his counsel are permissible. *Serrano*, 412 F.3d at 300. Rather, as we have recently recognized, the cases mandate "an intensely context-specific inquiry, the precise contours of which have yet to emerge." *Id.*

In undertaking this inquiry in the case before us, we will review *de novo* Andrews' claim that his Sixth Amendment rights have been violated. *Cf. United States v. Levy*, 377 F.3d 259, 264 (2d Cir. 2004). In addition, it is well settled that, in the *Geders* context, "a violation of a defendant's Sixth Amendment right to counsel . . . constitutes a structural defect which defies harmless error analysis and requires automatic reversal." *Jones v. Vacco*, 126 F.3d 408, 416 (2d Cir. 1997); *see also Perry*, 488 U.S. at 280 (citing *Strickland*, 466 U.S. at 692); *cf. United States v. Yakobowicz*, 427 F.3d 144, 153-54 (2d Cir. 2005) (distinguishing structural errors which "affect[] the framework within which the trial proceed[s]" and fundamentally undermine its fairness or validity, and therefore

---

[4] The types of restrictions that are justifiable will depend on the interests that the restrictions are aiming to protect. For example, in *Morgan* we found that prohibiting defense counsel from informing the defendant that a witness who alleged witness tampering was going to testify the next day, was a justified "carefully tailored, limited restriction" on the defendant's access to counsel. 204 F.3d at 367-68; *see also Padilla*, 203 F.3d at 160 (holding that there is no violation of the Sixth Amendment when the trial court ordered defense counsel not to tell their clients about an investigation into allegations that the defendants had engaged in witness tampering as this was a "reasonable restriction" to insure the integrity of the trial's "truth-seeking function"). In upholding these restrictions, we concluded that not only were the restrictions carefully tailored to the problem at hand, but also that the evil they intended to prevent was "*far more troubling* than the possibility of witness coaching involved in *Geders* and *Perry*, for intimidation of witnesses raises concerns for both the well-being of the witness and her family and the integrity of the judicial process." *Morgan*, 204 F.3d at 367 (emphasis added).

require automatic reversal, from trial errors, which are subject to harmless error review and "are discrete events that occur during the presentation of the case and may be quantitatively assessed in the context of the other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt" (internal quotation marks and alterations omitted)).

B.

We first consider the constitutionality of the overnight restriction on communication. The Government argues that there are three factors in this case that each independently preclude a finding of a Sixth Amendment violation: (1) the order prevented communication only about the defendant's testimony; (2) the ban lasted just three hours; and (3) any error was "cured" because the district court gave the defendant as much time as needed to consult with his attorney the next morning. We decline to adopt any such per se rules.

The issue of whether there can be a Sixth Amendment violation when the only attorney-client communication prohibited was communication about the defendant's testimony is one of first impression for our Circuit. Some state courts have held that such a ban does not implicate the Sixth Amendment because a defendant has no constitutional right to discuss ongoing testimony with his counsel. *See, e.g.*, *State v. Conway*, 842 N.E.2d 996, 1021 (Ohio 2006); *Webb v. State*, 663 A.2d 452, 459 (Del. 1995). But all of the federal circuit courts that have considered the issue have concluded that under *Perry* and *Geders* a district court may not order a defendant to refrain from discussing his ongoing testimony with counsel during an overnight recess, even if all other communication is allowed. *See United States v. Sandoval-Mendoza*, 472 F.3d 645, 651 (9th Cir. 2006); *United States v. Santos*, 201 F.3d 953, 965 (7th Cir. 2000); *United States v.* Cobb, 905 F.2d 784, 792 (4th Cir. 1990); *see also Mudd v. United States,* 798 F.2d 1509, 1510 (D.C. Cir. 1986)

10

(reaching the same holding under *Geders*, prior to *Perry*); *United States v. Romano*, 736 F.2d 1432, 1439 (11th Cir. 1984), *vacated in part on rehearing on other grounds by* 755 F.2d 1401 (11th Cir. 1985) (finding, prior to *Perry*, a Sixth Amendment violation where the court ordered defendant not to discuss his testimony with counsel during a recess that spanned five days).

The Government seeks to distinguish *Santos* and *Cobbs* on the grounds that they did not focus on whether communication of a "constitutional quality" was precluded, as required under Second Circuit precedent. (The Ninth Circuit opinion in *Sandoval-Mendoza* was issued after this case was argued, so it is not addressed in the briefs.) This, however, misreads those decisions. Neither *Santos*, *Cobbs*, nor *Sandoval-Mendoza* suggest that only the length of the restriction matters. To the contrary each concluded that an order banning the defendant from discussing his testimony with counsel during an overnight recess is unconstitutional because it has the *effect* of prohibiting a wide range of discussions that under *Geders* are constitutionally protected.

It is true that a defendant has no constitutional right to discuss his ongoing testimony with his attorney. *Perry*, 488 U.S at 284. But that does not end the inquiry. For as *Perry* recognizes, the defendant does have a constitutionally protected right to discuss a "variety of trial-related matters" during a substantial recess that "will *inevitably* include some consideration of the defendant's ongoing testimony." *Id.* (emphasis added).

Accordingly, as Judge Posner concluded in *Santos*, "*Perry* makes clear . . . that while the judge may instruct the lawyer not to coach his client, he may not forbid all 'consideration of the defendant's ongoing testimony' during a substantial recess, since that would as a practical matter preclude the assistance of counsel across a range of legitimate legal and tactical questions, such as warning the defendant not to mention excluded evidence." 201 F.3d at 965 (internal citation

11

omitted). The Fourth Circuit had no difficulty reaching the same result, explaining that it "would defy reason" not to conclude that "[t]o remove from [the defendant] the ability to discuss with his attorney any aspect of his ongoing testimony [would] effectively eviscerate[] his ability to discuss and plan trial strategy." *Cobb*, 905 F.2d at 792. *Cobb* emphasized that any competent counsel would need to "take into consideration the testimony of his client in deciding how to try the rest of the case." *Id.*; *see also Sandoval-Mendoza*, 472 F.3d at 651 ("[I]t is hard to see how a defendant's lawyer could ask him for the name of a witness who could corroborate his testimony or advise him to change his plea after disastrous testimony, subjects *Perry* expressly says a defendant has a right to discuss with his lawyer during an overnight recess, without discussing the testimony itself.").

We find the reasoning of the Fourth, Seventh, and Ninth Circuits persuasive. We agree that, as *Perry* suggests, a defendant's constitutional right to consult with his attorney on a variety of trial-related issues during a long break, such as an overnight recess, is inextricably intertwined with the ability to discuss his ongoing testimony. Thus, a ban on discussing testimony during a substantial recess does materially impede communication of a "constitutional quality." Accordingly, such a restriction generally will not be sufficiently "carefully tailored" to be constitutionally permissible under *Geders* and *Perry*. *See Morgan*, 204 F.3d 360. And as *Geders* mandates, when there is a conflict between "the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel . . . the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Geders,* 425 U.S. at 91. We, therefore, join our sister circuits and hold that a restriction on communication during a long recess can violate the Sixth Amendment even if the restriction bars discussion only of the defendant's testimony.

12

The Government's second argument—that, because the ban on communication was in place for only three hours, between 5 pm and 8 pm, it did not matter—also fails. Circuit precedent requires that we focus not on the length of time of the prohibition, but rather on the constitutional quality of the communications affected. *Padilla*, 203 F.3d at 160. Accordingly, we read *Perry* to permit the ban on communication there involved not simply because the break was only fifteen minutes, but instead because, given the context—a very short mid-day recess in the middle of the defendant's cross-examination—"it [was] appropriate to presume that nothing but the testimony w[ould] be discussed." *Perry*, 488 U.S at 284. In contrast, it seems equally appropriate to presume that the discussions between a client and defendant that are likely to occur in the three hours immediately after the close of the day's trial are precisely those, constitutionally-protected, conversations that *Geders* states usually take place during overnight recesses. Indeed, in many situations, most, if not all, of the "overnight recess" consultations between a defendant and his counsel likely happen—and often reasonably can only happen—during the hours immediately following the recess of the trial. Thus, the fact that the ban on discussing testimony was only in place from 5 pm-8 pm does not make it *per se* constitutional.

Finally, the Government asks us to return to a question that we explicitly left open in *Jones v. Vacco*, 126 F.3d 408, 417 (2d Cir. 1997)—whether a *Geders* violation can be "cured" by the fact that after the ban was lifted the defendant and his attorney were given time before the trial resumed in which to talk. In *Vacco*, finding that on the facts it was unclear whether the ban had in fact been lifted, we concluded that we did not need to reach that question. *Id.* But we expressed a reluctance to "rely on unforeseen circumstances to correct judicial error" and emphasized that "[o]ur constitutional rights must be respected *ab initio*." *Id.* Furthermore, we believe that restrictions on

13

*when* a defendant can talk with his attorney may substantially interfere with his right to effective assistance of counsel. These principles caution against a rule that would hold that an otherwise unconstitutional ban on attorney-defendant communication would automatically be "cured" by providing the defendant with time—even with substantial time—to consult with his attorney immediately prior to resuming his testimony. And we decline to adopt such a rule today.

Nevertheless, the fact that the defendant was provided with as much time as necessary to consult with his attorney on all subjects before testimony resumed is not irrelevant to our analysis. Nor is the fact that the restriction was limited to discussing testimony and that it lasted only three hours. Rather each of these factors is part of the totality of the circumstances that we must take into account in determining whether Andrews' Sixth Amendment rights were violated. And it is to this totality-of-the-circumstances analysis that we now turn.

C.

There are two types of situations in which a court order restricting communication between the defendant and his counsel will be found constitutional. First, a "carefully tailored, limited restriction" on communication may be justified to protect an important countervailing interest. *Morgan*, 204 F.3d at 367. The only plausible justification for the ban in the instant case was the interest in preventing improper influence on testimony.[5] But as we have seen, under *Geders*—and *Perry*—this interest will not justify a substantial interference with constitutionally protected communication. *Geders*, 425 U.S. at 91. And since banning discussion of testimony over an overnight recess substantially, albeit indirectly, interferes with communication of constitutional quality, an overnight ban on discussion of testimony falls squarely within the rule of *Geders*. Nor

---

[5] No explicit rationale for this ban before us was offered.

14

can the fact that the ban was later rescinded provide post-hoc justification for the initially unjustified order.

But even a restriction on communication that lacks justification, like the one here, may be sufficiently insignificant that it does not amount to a constitutional violation. In the related context of the Sixth Amendment right to a public trial—another structural error for which harmless error analysis does not apply—we have recognized that some unjustified court room closures may on their facts be "so trivial" as not to violate the Constitutional guarantee. *Peterson v. Williams*, 85 F.3d 39, 40 (2d Cir. 1996). Thus, for example, in *Peterson* we found that, in the circumstances of the case, an inadvertent, brief court closure, in which what went on *in camera* was later repeated in open court, did not violate the Sixth Amendment's facially categorical "right to a . . . public trial." *Id.* (quoting U.S. Const. amend. VI).

The triviality standard

> does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer "prejudice" or "specific injury." It is, in other words, very different from a harmless error inquiry. It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment.

*Peterson*, 85 F.3d at 42. As we subsequently explained, the analysis turns on whether the conduct at issue "subverts the values the drafters of the Sixth Amendment sought to protect." *Smith v. Hollins*, 448 F.3d 533, 540 (2d Cir. 2006).

The triviality standard is equally applicable to bans on attorney-defendant communication. The Supreme Court has recognized that allowing open communication between an attorney and the defendant implicates one of the core values of the Sixth Amendment—insuring that a defendant, who

15

ordinarily is "ill-equipped to understand and deal with the trial process without a lawyer's guidance," is able to receive the advice, counsel, and support of his attorney at every part of the trial, and other critical stages of his defense. *Geders*, 425 U.S. at 88, 89. When, in the totality of the circumstances, a court order banning communications during a trial recess—even if unjustified—is issued in good faith and does not actually prevent the defendant from communicating, unfettered, with his attorney about the full panoply of trial related issues prior to the trial resuming, nor meaningfully interferes with the quality of advice and counsel the attorney is able to provide during that recess[6]—the fundamental values of the Sixth Amendment that *Geders* protects have not been subverted. In such limited circumstances a restriction may be deemed trivial and judged not to amount to a Sixth Amendment violation.

While, in the ordinary course, a three-hour evening ban on discussion of testimony could be far from slight, in the unusual circumstances presented by the instant case, we believe that the court's restriction was trivial and did not meaningfully interfere with the defendant's Sixth Amendment rights to effective assistance of counsel.

First, defense counsel was on notice, at around 5:30 pm, within twenty minutes after the district court ordered him not to discuss the defendant's testimony with the defendant—and before counsel left the courthouse—that the Government might ask the court to rescind the ban on discussion of testimony and would schedule a conference call later in that evening if necessary. Even assuming that the defendant was not still in the court room—which is in dispute—defense

---

[6] This constitutionally protected right to counsel and to guidance from an attorney, includes both the directly practical—making tactical and strategic decision, obtaining information, informing the defendant of his rights, etc.—and the less tangible, but equally important role of reassuring and helping the defendant understand what is going on in the proceedings. *See Geders*, 425 U.S. at 88.

16

counsel admitted that he could have immediately called Andrews on his cell phone to alert him and arrange to talk later in the evening. Similarly, defense counsel could reasonably have taken a number of other steps to insure that if the ban was temporary the effects on his client would be minimized. He could, for instance, have made notes so that the defendant's testimony would remain fresh in his mind, have brought the files he needed with him, and taken steps to remain fully alert if the ban were shortly lifted.

By 7 pm, defense counsel had been contacted by the Government and knew that that the ban would likely be removed. Again, defense counsel could have—but did not— immediately attempt to contact the defendant to notify him. (The defendant had not yet begun his prayer meeting with his cell phone turned off.)

Given what transpired after the court issued the order, we are not persuaded that it was the *restrictions placed on the communication by the court*, rather than the decisions made by defense counsel, that precluded Andrews from being able to consult freely with his counsel that evening.[7] And, of course, in analyzing whether there has been a structural constitutional violation under *Geders*, our focus is on the interferences with communication that were the result of a district court order or other government action. Disruptions in communication attributable to actions taken—or not taken—by the defense counsel, instead go to the question of whether there was ineffective assistance of counsel under *Strickland*. And the latter requires a consideration not only of whether there has been a constitutional violation but also of whether there was prejudice—an issue not raised by the defendant here. *See Strickland*, 466 U.S. at 686.

---

[7] In this respect the case would be very different had the defense counsel found out for the first time at 8 pm that the ban might be lifted.

17

Second, while a ban on discussion of testimony in the context of a long recess substantially interferes with constitutionally protected attorney-client communications, it is clearly not as severe an interference as an absolute ban on communication. Since the restriction was only on discussion of testimony, had the defendant and his counsel in fact desired to discuss issues that went beyond rehashing the defendant's cross-examination performance from the first day and planning his testimony for the next day, they could have at least begun that broader conversation immediately on hearing that the ban might be soon rescinded, or, indeed, even before there was any suggestion that the ban might be lifted.[8]

Third, prior to taking the stand the next day, Andrews was given as much time as he needed to confer with his counsel about anything, including his testimony. And after taking forty-five minutes to consult, defense counsel informed the district court that they had had "sufficient time." Thus, critically, at no point in the trial did the defendant have to proceed without having an opportunity to receive the unrestrained advice and counsel of his attorney. Defense counsel argues persuasively that no amount of time is an adequate substitute for talking with the defendant immediately after his testimony. And in some circumstances such an argument might be compelling. But here defendant and his attorney could have reasonably been expected to speak—at least by telephone—the night before. Moreover, they did nothing to reduce whatever disabilities the temporary ban might have placed on their subsequent discussions. They did not, for example, seek

---

[8] Moreover, the fact that the ban was not absolute enabled defense counsel to keep the defendant apprised of the situation and of the possible rescission of the order.

to rectify any lack of recollection or notes by requesting that daily transcripts from the proceeding day be provided prior to resuming the trial.[9]

Finally, in the case before us it is clear that the Government acted in full good faith. It was the defense—not the Government—which first raised the issue of whether the defendant could discuss his testimony with counsel. Not surprisingly, the Government—in reacting—had not had an opportunity to research whether any restrictions might be constitutional. And when the Government, nearly immediately, realized that there might be serious problems with the ban, it informed the defendant and the court forthwith, diligently researched the issue, and attempted to have the ban lifted as quickly as possible. In discussing the Government's good faith, we do not mean to suggest approval of what occurred. The fact that the Government and court did not realize that the restriction was unconstitutional cannot, of course, justify it. And it would have been far better for the Government—and the court—to have considered the validity of the ban prior to its being imposed, rather than after the fact. Nor do we suggest that government good faith, in itself, can render potential violations trivial. But it can be a factor in examining the totality of the circumstances.[10]

When all of the circumstances are taken into consideration, it is evident that Andrews' communication with his attorney was only trivially affected by the short-lived court-imposed restriction on overnight communication. Accordingly, the order did not violate Andrews' Sixth Amendment rights.

---

[9] At oral argument, the parties acknowledged that daily transcripts had routinely been made available throughout the trial.

[10] Conversely, were the Government clearly acting in bad faith it would probably be hard to avoid concluding that the underlying core purposes of the right to consult counsel were violated.

We emphasize, yet again, the narrowness of our holding. The imposition of the court order on Andrews' right to effective assistance of counsel was trivial because, *inter alia*, (1) the order restricted only the discussion of testimony and did not cut off all communication; (2) defense counsel, while still in the courthouse and less than thirty minutes after it was put in place, was informed the ban might be lifted; (3) counsel admits that he could have contacted the defendant at that time to make arrangements to speak later that evening, but made no attempt to do so; (4) the defendant was still available by cell phone at the time defense counsel learned that restriction on communication was going to be lifted; (5) the restriction on communications was lifted at 8 pm, three hours after it was initiated; (6) the defendant was given as much time as necessary to consult with his attorney prior to beginning testimony the next day and acknowledged that he had had sufficient time; and (7) there was no bad faith on the part of the government or the court. We do not hold that any one of these factors alone would have lead to the restriction being constitutional. Indeed, had any of these factors *not* been present, our conclusion might well have been different.

### D.

The defendant also argues that the restrictions the district court placed on the discussion of testimony between defendant and his counsel during daytime recesses of the last two days of the defendant's cross-examination violated his right to effective assistance of counsel. Although the district court did not renew the overnight ban, the district court did issue new orders during the second and third day of Andrews cross-examination barring the defendant from discussing his testimony with counsel during short morning and afternoon breaks and during the one-hour lunch breaks.

*Perry* is dispositive as to the orders limiting communication during the brief morning and afternoon recesses. Under *Perry*, a court is entitled to prohibit *all* communication during such recesses. If follows that a narrower ban, limited just to discussion of testimony, must also be constitutionally permitted. *See Perry*, 488 U.S. at 285 n.8 (suggesting that instead of preventing all consultation during a short break, "the judge may permit consultation between counsel and defendant during such a recess, but forbid discussion of ongoing testimony" (internal citation omitted).

The issue of whether the restriction on communication during an hour-long lunch break falls on the *Perry* or *Geders* side of the line is, however, more difficult. In *Serrano*, in the context of a habeas petition, we considered the constitutionality of an absolute ban on attorney-defendant communications during a ninety-minute lunch break. We concluded that such a ban was not "contrary to, [n]or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." *Serrano*, 412 F.3d at 296, 300-01. But we held this given the defense counsel's defiance of trial court rulings and his refusal to agree to a more limited order—not to discuss the defendant's testimony—during the break. *Id.* And in doing so, we explicitly avoided ruling on whether such a ban would be held unconstitutional if presented on direct appeal or whether, in other circumstances, such a ban would be unreasonable.[11] *Id.* at 303

---

[11] The Third Circuit recently reached a similar conclusion and also avoided ruling on the *Perry/Geders* issue conclusively, in the context of a claim of ineffective assistance of appellate counsel, holding that appellate counsel was not unreasonable in failing to argue to the state appellate court that an order banning the defendant from speaking with anyone during a lunch break was unconstitutional. *Albrecht v. Horn,* 471 F.3d 435 (3d Cir. 2006). The court based its decision on its view that had the issue been raised it would not have been clearly meritorious because "the two-hour prohibition over lunch time, which occurred in the middle of cross-examination, *likely* is tolerable under *Perry* insofar as the sole topic of discussion would have been the testimony itself. " *Id.* at 467 (emphasis added). Recently, however, the panel in *Albrecht* granted rehearing and vacated its decision in the case. *Albrecht v. Horn,* No. 04-9005, 2007 U.S. App. LEXIS 8224 (3d Cir. April 10, 2007). The case raises a number of unrelated issues, and it is not clear which of these issues the court plans on reconsidering.

("We emphasize the narrowness of our holding. We do not hold that a ninety-minute bar on attorney-client communications during a recess from a defendant's testimony necessarily falls within the rule announced in *Perry*. Nor do we hold that it would constitute a reasonable application of Supreme Court precedent under § 2254(d)(1) to bar attorney-client communications during a lunch recess in circumstances other than those present in this case. . . . We only hold that in light of defense counsel's defiant behavior at trial, the state court decisions rejecting petitioner's deprivation-of-counsel claim were not contrary to Supreme Court precedent and did not involve an unreasonable application of that precedent within the meaning of 28 U.S.C. §2254(d)(1).").

We have not had an opportunity since *Serrano* to revisit the issue. Thus, both the question of whether an absolute ban on attorney-client communication during a one-hour lunch break, and the question presented here—the constitutionality of a lunch time ban only on discussing the defendant's testimony, remain open in our circuit.

The presumption that nothing will be talked about except testimony during a lunch break may well be more tenuous than *Perry's* key presumption to the same effect with respect to a fifteen-minute recess. We need not, however, reach the question of whether there is a sufficient difference to preclude an absolute ban on attorney-client consultation during a lunch break. Rather, we conclude that regardless of whether an absolute ban on communication would be permitted, a ban only on attorney-client discussion of the defendant's ongoing testimony during an hour lunch break does not violate the Sixth Amendment.

Since a defendant has no constitutional right to discuss the contents of his testimony while it is ongoing, a court has more leeway to issue an order barring discussion of testimony than an order barring all communication. As we have emphasized earlier, this discretion is cabined because of the

22

inevitable link between discussing testimony and the constitutionally protected right to talk with counsel about the whole range of trial-related issues. As a result, during an overnight break, the right to unfettered access controls, and any such a ban will not usually pass constitutional muster. *Geders,* 425 U.S. at 91; *see also supra* II.B-C. But, as long as a defendant is provided unfettered access to his attorney during subsequent overnight breaks, a mid-day, one-hour ban on discussing ongoing testimony is likely to interfere only in minimal ways on any constitutionally protected communication. As a result, such a restriction will generally be sufficiently narrowly tailored to be constitutionally justifiable. There may be situations in which a defendant could show that in the specific circumstances discussion of her testimony during lunch was necessary for counsel to provide effective assistance regarding decisions that had to be made that afternoon. And in such a situation, counsel would be free to explain the circumstances to the district court, and the court would then need to take into account these circumstances to make sure that no unconstitutional restrictions were imposed. But there has been no such showing here. Accordingly, we conclude that the district court's lunch-time restrictions did not violate defendant Andrews' Sixth Amendment rights.

***

Having found that none of the restrictions on Andrews' access to counsel amounted to a constitutional violation, we AFFIRM the judgment of the district court.

23