

# Fourth Court of Appeals
## San Antonio, Texas

**DISSENTING OPINION**

No. 04-18-00484-CR

David Asa **VILLARREAL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR0549
Honorable Jefferson Moore, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: December 27, 2019

I believe the majority applies the wrong standard of review to Villarreal's Sixth Amendment assistance of counsel claim. Because I believe the trial court's order effectively denied Villarreal his Sixth Amendment right to assistance of counsel by prohibiting him from conferring with his attorney during an overnight recess, I respectfully dissent.[1]

---

[1] Because I find Villarreal's second issue dispositive, I do not address Villarreal's first issue. *See* TEX. R. APP. P. 47.1.

**RIGHT TO ASSISTANCE OF COUNSEL**

*Standard of Review and Applicable Law*

Villarreal's Sixth Amendment assistance of counsel claim should properly be reviewed under a *de novo* standard of review. "In approaching a Sixth Amendment right-to-counsel question, as with many other constitutional issues, . . . [a]n appellate court should afford 'almost total deference' to a trial court's determination of the historical facts and to its determination of mixed questions of law and fact that turn on an evaluation of credibility and demeanor. Mixed questions of law and fact that do not turn on credibility and demeanor are to be reviewed *de novo*." *See Manns v. State*, 122 S.W.3d 171, 178 (Tex. Crim. App. 2003) (internal footnotes and citations omitted). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. The Supreme Court has long recognized that a defendant's right to assistance of counsel is "important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." *Geders v. United States*, 425 U.S. 80, 88 (1976). Thus, the Supreme Court has interpreted the right to assistance of counsel "to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments." *Herring v. New York*, 422 U.S. 853, 857–58 (1975).

Claims that a defendant's Sixth Amendment right to assistance of counsel were violated by a trial court order restricting communication between the defendant and his attorney are governed by two seminal Supreme Court cases, *Geders v. United States*, 425 U.S. 80 (1976), and *Perry v. Leeke*, 488 U.S. 272 (1989). In *Geders*, the Supreme Court held that "an order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct-and cross-examination impinged upon his right to the assistance of counsel guaranteed

by the Sixth Amendment." *Geders*, 425 U.S. at 91. The Court reasoned that a trial court's "broad power" in limiting witnesses' communications before, during, and after their testimony in order to lessen the possibility of witness tampering is curtailed when the witness is the defendant because "[a] sequestration order affects a defendant in quite a different way from the way it affects a nonparty witness who presumably has no stake in the outcome of the trial." *Id.* at 87–88. The Court explained that an overnight recess is often a crucial time for both the defendant and his counsel:

> It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss the significance of the day's events.

*Id*. at 88. The Court noted that a trial court could employ other means to guard against improper witness influence, such as allowing the examination to conclude. The Court concluded:

> To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel.

*Id*. at 91 (citing *Brooks v. Tennessee*, 406 U.S. 605 (1972)).

Thirteen years later, the Supreme Court explained its *Geders* precedent and further defined the contours of a defendant's Sixth Amendment right to assistance of counsel in *Perry v. Leeke*, 488 U.S. 272 (1989). In *Perry*, the Court held that an order barring a defendant from consulting with his attorney during a 15-minute afternoon break did *not* violate the defendant's Sixth Amendment right to assistance of counsel. *Id.* at 284–85. While the Court acknowledged that "the line between the facts of *Geders* and the facts of [*Perry*] is a thin one," the Court explained,

The interruption in *Geders* was of a different character because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain. It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess. The fact that such discussions will *inevitably include some consideration of the defendant's ongoing testimony* does not compromise that basic right. But in a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice.

*Id.* at 284 (emphasis added) (citation omitted).

<u>Sixth Amendment Discussion</u>

Villarreal's trial commenced on June 19, 2018, when the State began its case-in-chief. On the third day of trial, the State offered three witnesses before resting. Defense counsel moved for a directed verdict, which the trial court denied.

Defense counsel then began the presentation of defendant's case-in-chief, and Villarreal took the stand to testify in his own defense. Villarreal's testimony consisted of his relationship with Estrada and the events leading up to Estrada's murder, including the verbal and physical altercation between Villarreal and Estrada that allegedly precipitated the murder. As Villarreal was testifying to his actions immediately following the stabbing of Estrada, the trial court called a recess at 1:00 p.m. The recess would last until the following day at 1:00 p.m., at which time Villarreal's direct examination would continue. The majority's opinion considers the exchange between the trial court and Villarreal's counsel and interprets the instruction to counsel as a permissible exercise of "discretion to limit Villarreal's right to confer with his attorneys during an overnight recess to topics other than his ongoing testimony." The majority essentially agrees with the State's argument that the trial court's order struck a proper balance between the two competing concerns emphasized in both *Geders* and *Perry*: preserving the integrity of the defendant's

testimony and protecting the defendant's Sixth Amendment right to assistance of counsel. Respectfully, this view lacks an objective perspective of the state of the case and the instruction's effect upon counsel and the accused.

As the record reflects, the trial court repeatedly ordered defense counsel to treat Villarreal as if he was still on the witness stand during the overnight recess. Defense counsel was not to discuss "what you couldn't discuss with him if he was on the stand in front of the [j]ury" and "to decide, if he asks you any questions . . ., [ask yourself] is this something that is going to be considered to be conferring with him on the witness stand while the jury is there or not." As the majority emphasizes, a defendant has no constitutional right to consult with his lawyer while he is testifying. As instructed, Villarreal's defense counsel were to treat Villarreal as if he was still on the witness stand in front of the jury, thus unable to consult with him at all during the overnight recess. When asked to confirm that counsel could not confer with their client, the trial court, supposing they may reach the sentencing phase the next day, permitted Villarreal's counsel to discuss "possible sentencing issues" with him during the overnight recess but immediately repeated his instruction, "I don't want you discussing what you couldn't discuss with him if he was on the stand in front of the jury." Understanding the trial court's instruction as a muzzle, counsel properly urged an objection under the Sixth Amendment. Considering the trial court's order in its entirety, Villarreal was deprived of counsel who could consult with him "about anything" or, at a minimum, about trial matters coming before the sentencing phase that did not concern "sentencing issues." *Geders*, 425 U.S. at 91 ("holding an order preventing [appellant] from consulting [with] his counsel 'about anything' during a [24]-hour overnight recess" is unconstitutional and "impinge[s] upon [the appellant's] right to the assistance of counsel guaranteed by the Sixth Amendment").

This division, however, is impermissible during a 24-hour overnight recess, as *Perry* and *Geders* explained. *See id.* at 284. Here, where the witness is the defendant testifying *after* the State has rested and the 24-hour overnight recess is the last before the defense rests, the majority acknowledges but ignores what the Supreme Court in *Perry* recognized—an overnight recess is an "interruption . . . of a different character" and, thus, a defendant has a constitutionally protected right to discuss a "variety of trial-related matters" during an overnight recess that "will *inevitably* include some consideration of the defendant's ongoing testimony." *Id.* at 281, 284 (emphasis added). "It is the defendant's right to *unrestricted access* to his lawyer for advice on a variety of trial-related matters that is *controlling in the context of a long recess*," regardless of "the fact that such discussions will *inevitably include some consideration of the defendant's ongoing testimony*." *See id.* at 284 (emphasis added). *Perry*'s reasoning was buttressed in *Geders* by specific examples of appropriate subjects of discussion that touch upon a defendant's testimony, including "obtain[ing] . . . information made relevant by the day's testimony," such as the names and availability of other witnesses who may be able to corroborate the defendant's testimony or discussing the possibility of negotiating a plea bargain after a defendant's potentially damaging testimony. *Geders*, 425 U.S. at 88; *see Perry*, 488 U.S. at 284. Consultation between a defense attorney and his client "cannot be neatly divided into discussions about 'testimony' and those about 'other' matters." *Mudd v. United States*, 798 F.2d 1509, 1512 (D.C. Cir. 1986). Unguided, the majority interprets the trial court's instructions as an attempt "to thread the needle" that permissibly left Villarreal free to consult with his attorneys on any matter not related to his ongoing testimony.

Here, the overnight recess occurred after the State had rested and during Villarreal's direct-examination while Villarreal was testifying to the alleged altercation that precipitated the stabbing

of the victim. Discussions between Villarreal and his counsel, as *Perry* recognized, would thus inevitably include "some consideration of" Villarreal's testimony, particularly since the entirety of the defense's case-in-chief rested solely on Villarreal's testimony of self-defense. *See Perry*, 488 U.S. at 284. This is supported by the fact that on the day following the overnight recess, Villarreal's testimony on direct concerned the defensive wounds Villarreal had allegedly received from the altercation that led to the stabbing of the victim. Thus, the trial court's order prevented Villarreal from conferring with counsel about defensive matters that were "inextricably intertwined" with his previous testimony on direct. *See United States v. Triumph Capital Grp., Inc.*, 487 F.3d 124, 133 (2d Cir. 2007) ("[A] defendant's constitutional right to consult with his attorney on a variety of trial-related issues during a long break, such as an overnight recess, is inextricably intertwined with the ability to discuss his ongoing testimony"). Because Villarreal's entire defensive theory hinged on his testimony, Villarreal "may have needed advice on demeanor or speaking style, a task made more difficult if specific testimony could not be mentioned." *See Mudd*, 798 F.2d at 1512; *see also United States v. Santos*, 201 F.3d 953, 965 (7th Cir. 2000) (holding that prohibiting the defendant from discussing his ongoing testimony with his attorney during a substantial recess "would as a practical matter preclude the assistance of counsel across a range of legitimate legal and tactical questions").

Further, the trial court's order was not just a simple instruction prohibiting Villarreal from discussing his testimony with his attorney; rather, it was an ambiguous order where Villarreal's defense counsel, prior to advising Villarreal on his defensive strategy, was left to question whether the matter to be discussed was "something that is going to be considered to be conferring with [Villarreal] on the witness stand while the jury is there or not." *Cf. Commonwealth v. Werner*, 214 A.2d 276, 278 (Pa. Super. Ct. 1965) ("It is not the function of the trial judge to decide what a

defendant's defense should be, nor when or how that defense should be planned, nor how much consultation between a defendant and his retained counsel is necessary to adequately cope with changing trial situations. That is the function of counsel."). Even if Villarreal's defense counsel understood the trial court's order as an attempt to sever discussions between Villarreal's testimony and other permissible vaguely-defined matters, such as "possible sentencing issues," "an order such as [this] one . . . can have a chilling effect on cautious attorneys, who might avoid giving advice on non-testimonial matters for fear of violating the court's directive," particularly in light of the trial court's cautionary statement to Villarreal's counsel that "lawyers are under different rules than the defendants are." *See Mudd*, 798 F.2d at 1512. Defense counsel may have avoided further developing and exploring Villarreal's theory of self-defense with him during the overnight recess out of fear of violating the trial court's order were they to inevitably broach Villarreal's ongoing testimony. *See Geders*, 425 U.S. at 88. The trial court's order may have had a similar "chilling effect" in preventing defense counsel from discussing with Villarreal the "possibility of negotiating a plea bargain" if they had been dissatisfied with Villarreal's testimony on direct. *See Perry*, 488 U.S. at 284; *Mudd*, 798 F.2d at 1512. Further, defense counsel may have cautiously avoided reevaluating trial tactics and strategies with Villarreal because it would require some consideration of Villarreal's ongoing testimony. *See Perry*, 488 U.S. at 284; *United States v. Cobb*, 905 F.2d 784, 792 (4th Cir. 1990) ("To remove from [the defendant] the ability to discuss with his attorney any aspect of his ongoing testimony effectively eviscerate[s] his ability to discuss and plan trial strategy. To hold otherwise would defy reason. How can competent counsel not take into consideration the testimony of his client in deciding how to try the rest of the case?").

Notably, in this case, Villarreal's testimony was interrupted on direct examination after the State had rested, and the trial court's instructions were made *sua sponte*. Unlike in *Geders*, the

government did not request an instruction pertaining to communications with the witness during the 24-hour long recess, and the prosecutor expressed no desire to cross-examine Villarreal without the intervention of counsel due to a risk of improper 'coaching.' The trial court was not asked to resolve any conflict between Villarreal's right to counsel and the prosecutor's desire to cross-examine an uninfluenced witness on cross-examination. *See Geders*, 425 U.S. at 82. The concerns expressed in both *Geders* and *Perry* are not present here; the instruction is thus even less justified than the order deemed impermissible in *Geders*. *See Geders*, 425 U.S. at 91 (holding the "prosecutor's desire to cross-examine the defendant without the intervention of counsel" to prevent "the risk of improper 'coaching'" must yield to the "defendant's right to consult with his attorney during a long overnight recess in the trial"). Even assuming a perceived risk by the trial court, "the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *See Geders*, 425 U.S. at 91). This conclusion is consistent with decisions by all of the federal circuit courts that have considered the issue—the Second Circuit, the Ninth Circuit, the Seventh Circuit, the Fourth Circuit, and the District of Columbia Circuit. *See Triumph*, 487 F.3d at 132 ("[A]ll of the federal circuit courts that have considered the issue have concluded that under *Perry* and *Geders* a district court may not order a defendant to refrain from discussing his ongoing testimony with counsel during an overnight recess, even if all other communication is allowed."); *United States v. Sandoval-Mendoza*, 472 F.3d 645, 651 (9th Cir. 2006); *Santos*, 201 F.3d at 965; *Cobb*, 905 F.2d at 792; *Mudd*, 798 F.2d at 1510.

For these reasons, I believe the trial court's order prohibiting Villarreal from conferring with his attorney during an overnight recess deprived him of his Sixth Amendment right to assistance of counsel.

*Alternatively, Abuse of Discretion Review*

Alternatively, I would also conclude that the trial court abused its discretion by prohibiting Villarreal from conferring with his attorney during the overnight recess, particularly where the trial court acts *sua sponte* and without the State indicating a desire to cross-examine an uninfluenced witness because of a perceived risk of 'coaching' by defense counsel. A trial court abuses its discretion by acting without reference to guiding rules and principles or by acting arbitrarily or unreasonably. *Burks v. State*, 227 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993)). As the record reflects, the trial court did not merely prohibit Villarreal from discussing his testimony with his attorney, but repeatedly ordered defense counsel to treat Villarreal as if he was still on the witness stand during the overnight recess. Because a testifying defendant does not have a constitutional right to advice from counsel while on the stand, the trial court's instructions effectively divested Villarreal of his right to unrestricted consultation with counsel during the long overnight recess. The trial court essentially equated the long, overnight recess with a short, few-minute break. The trial court was thus acting without reference to the guiding constitutional principles set out in *Geders* and *Perry* by denying Villarreal of his "right to unrestricted access to his lawyer for advice" and abused its discretion by depriving Villarreal of his Sixth Amendment right to assistance of counsel during the overnight recess. *See Geders*, 425 U.S. at 91; *Perry,* 488 U.S. at 284.

Even assuming, as the majority does, that the trial court "tried to thread the needle" by prohibiting only communications concerning Villarreal's ongoing testimony, the trial court did not have the discretion to impose even this tailored limitation on Villarreal and his counsel because their discussions during the 24-hour long overnight recess would "inevitably include some consideration of the defendant's ongoing testimony." *See Perry,* 488 U.S. at 284. While it is

entirely "appropriate to presume that nothing but the testimony will be discussed" in a short recess, an overnight recess is "of a different character" and is not subject to the same presumption. *Id.* Instead, "[i]t is the defendant's right to *unrestricted* access to his lawyer . . . that is controlling in the context of a long recess." *Id.* (emphasis added). Because this was a recess spanning 24-hours, much longer than the 17-hour overnight recess in *Geders*, the trial court had no discretion to take away Villarreal's right to "unrestricted access" to his lawyer even if such discussions would involve ongoing testimony, particularly where his own testimony amounts to his whole defense. *See id.*; *cf. Werner*, 214 A.2d at 278 ("The right to the assistance of . . . counsel is not a right which exists only from 9 a.m. to 4 p.m. and only in the courtroom and only concerning certain aspects of the case. The defendant had the right to discuss the entire case, including his own testimony, with his attorney. . . . Discussion of this testimony might have been very important in determining the future course of his defense.").

For these reasons, I would also find, in the alternative, that the trial court acted without reference to the constitutional principles set out in *Geders* and *Perry*, and thus abused its discretion by prohibiting counsel to provide unrestricted counsel to Villarreal during the overnight recess.

*Harm Discussion*

Having found error under an abuse of discretion standard, I must next consider whether the error is "structural" and thus reversible without a showing of harm, or whether the error must be subjected to a harm analysis because it is not "structural." *See Johnson v. State*, 169 S.W.3d 223, 235–36 (Tex. Crim. App. 2005). A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Johnson v. United States*, 520 U.S. 461, 468 (1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Structural errors "give rise to automatic reversal, with no harm analysis whatsoever." *Johnson*,

169 S.W.3d at 232. We may "not review and analyze a claim of error as structural error unless the United States Supreme Court has defined the error as structural . . . ." *Burks*, 227 S.W.3d at 144 (citing *Gray v State*, 159 S.W.3d 95, 97 (Tex. Crim. App. 2005)).

> In *Johnson v. United States*, the Supreme Court set forth its most recent list of structural errors: the total deprivation of counsel at trial, lack of an impartial trial judge, the unlawful exclusion of members of the defendant's race from a grand jury, the denial of the right to self-representation at trial, the denial of the right to a public trial, and an instruction that erroneously lowers the burden of proof for conviction below the "beyond a reasonable doubt" standard.

*Johnson*, 169 S.W.3d at 235 (quoting *Johnson*, 520 U.S. at 468–69).

"All structural errors must be founded on a violation of a federal constitutional right, but not all violations of federal constitutional rights amount to structural errors." *Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014). In fact, "[m]ost constitutional errors are not 'structural.'" *Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004). "For federal constitutional error that is not structural, the applicable harm analysis requires the appellate court to reverse unless it determines beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment." *Lake v. State*, 532 S.W.3d 408, 411 (Tex. Crim. App. 2017) (citing TEX. R. APP. P. 44.2(a)).

Here, the State contends that Villarreal did not suffer structural error, that is, he did not suffer a total deprivation of counsel, and thus a harm analysis is required. I disagree. The Supreme Court likened a *Geders* violation to the "actual or constructive denial of the assistance of counsel *altogether*" and:

> simply reversed the defendant's conviction without pausing to consider the extent of the actual prejudice, if any, that resulted from the defendant's denial of access to his lawyer during the overnight recess. That reversal was consistent with the view we have often expressed concerning the fundamental importance of the criminal defendant's constitutional right to be represented by counsel.

*Perry*, 488 U.S. at 279–80 (emphasis added) (citation omitted).  Moreover, in *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court cited *Geders* as an example of where it had "found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  *Id.* at 659 n.25; *see also Johnson*, 169 S.W.3d at 231 (likening the "denial of counsel at a critical stage" to "the deprivation of a trial and the deprivation of an appeal" and reasoning both errors "would clearly be reversible without a showing of harm").

Additionally, having already found that Villarreal was denied his Sixth Amendment right to assistance of counsel, "it would be anomalous if defendant was also forced to relinquish the right to have his discussions with his lawyer kept confidential" because "[t]he only way that a defendant could show prejudice [in this context] would be to present evidence of what he and counsel discussed, what they were prevented from discussing, and how the order altered the preparation of his defense" and would thus improperly infringe upon the defendant's attorney-client privilege.  *See Mudd*, 798 F.2d at 1513.

Here, the trial court's order, much like the order in *Geders*, prevented Villarreal from consulting with his lawyer during a 24-hour overnight recess.  As the Supreme Court held in *Geders*, an order that prohibits the appellant from consulting with his counsel during a 24-hour overnight recess is unconstitutional and "impinge[s] upon [the appellant's] right to the assistance of counsel guaranteed by the Sixth Amendment."  *See Geders*, 425 U.S. at 91.  Moreover, the trial court's order effectively denied Villarreal the constitutional right to discuss trial-related matters with his attorney and it prohibited Villarreal and his counsel from further developing Villarreal's defense during the overnight recess; thus, Villarreal was denied the "guiding hand of counsel at every step in the proceedings against him."  *See id.* at 88–89 (quoting *Powell v. Alabama*, 287 U.S.

45, 68–69 (1932)).  Because the trial court's order, like the order held impermissible in *Geders*, constructively denied Villarreal "assistance of counsel altogether," the error is "structural" and thus reversible without a showing of harm or prejudice.  *See Perry*, 488 U.S. at 280.

Alternatively, if the trial court's error were subjected to a harm analysis, I cannot say "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *See* TEX. R. APP. P. 44.2(a).  Thus, in the alternative, reversal is also required under Rule 44.2(a).  Under Texas Rule of Appellate Procedure 44.2(a), a non-structural federal constitutional error must be reversed "unless the court determines beyond a reasonable doubt that the error did not contribute to [Villarreal's] conviction or punishment." *Id.*  Under this standard, the State has the burden to prove the error is harmless beyond a reasonable doubt. *Davis v. State*, 195 S.W.3d 311, 316–17 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Chapman v. California*, 386 U.S. 18, 26 (1967) (finding, under the "harmless-constitutional-error" test, that the State did not demonstrate to the Court, beyond a reasonable doubt, that the error did not contribute to petitioner's conviction).  "Unless the error could not possibly have contributed to the conviction or punishment, we must reverse." *Davis*, 195 S.W.3d at 316–17 (citing *Wall*, 184 S.W.3d at 746).  A reviewing court may consider "the source and nature of the error, the extent to which the State emphasized it, its probable collateral implications, [and] the weight the jury would probably give it," though these factors are neither exhaustive or dispositive. *Id.* (citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989)).  "If, after such analysis, the harm of the error simply cannot be assessed, then 'the error will not be proven harmless beyond a reasonable doubt,' and reversal is required." *Morris v State*, 554 S.W.3d 98, 124 (Tex. App.—El Paso 2018, pet. ref'd) (quoting *Lake*, 532 S.W.3d at 411).

Here, the State argues "if depriving a defendant of his ability to discuss his testimony with counsel during a short break is not even error . . ., then it is hard to see how the restriction is not 'obviously' harmless under the circumstances." However, an overnight recess is of an entirely "different character" and while it is "appropriate to presume that nothing but the testimony will be discussed" in a short recess, in the context of a long recess, "[i]t is the defendant's right to unrestricted access to his lawyer for advice . . . that is controlling," even if "such discussions will inevitably include some consideration of the defendant's ongoing testimony." *See Perry,* 488 U.S. at 284. Moreover, "[t]he only way that a defendant could show prejudice [in this context] would be to present evidence of what he and counsel discussed, what they were prevented from discussing, and how the order altered the preparation of his defense," which are private discussions reasonably protected by the attorney-client privilege. *See Mudd*, 798 F.2d at 1513. Further, given the ambiguous nature of the trial court's order to Villarreal,[2] we cannot say beyond a reasonable doubt that Villarreal understood he could still, in fact, communicate with his attorneys, nor can we determine whether Villarreal refrained from consulting with his attorneys for fear of violating the trial court's order. *Cf. Geders*, 425 U.S. at 88–89 ("The right to be heard would be, in many cases, of little avail if [the defendant] did not comprehend the right to be heard by counsel. . . . [A defendant] is unfamiliar with the rules of evidence. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he [may] have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him." (quoting *Powell*, 287 U.S. at 68–69)). Certainly, counsel expressed such a concern. Accordingly, I would conclude, in the alternative, that if the trial court's error were subjected to a harm analysis, I cannot say beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

---

[2] For example, the trial court first directed its order to Villarreal: "And so I'd like to tell you [Villarreal] that you can't confer with your attorney but [at] the same time you have a [Sixth] Amendment right to talk to your attorney."

For the reasons stated above, I respectfully dissent.

Rebeca C. Martinez, Justice

PUBLISH